STATE of Missouri, Respondent,

v.

Phillip A. ACKLIN, Appellant.

No. WD 39074.

Missouri Court of Appeals,
Western District.

Sept. 29, 1987.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

Appellant, Phillip A. Acklin, was tried by a jury and on conviction for the offense of second degree murder, he was sentenced to life imprisonment. On this appeal, Acklin contends the trial court erred by (1) sustaining the state's objection to testimony offered of witness Rickey Pilgrim, (2) over-ruling an objection to the prosecutor's voir dire and closing argument discussion of reasonable doubt, (3) admitting evidence of other crimes committed by appellant, (4) permitting the state to introduce a show-up report in evidence, and (5) giving MAI–CR2d 1.02 and 2.20 defining reasonable doubt.

In broad outline, the evidence favorable to the state and consistent with the verdict established that on March 17, 1986, in the early evening hours, a black male and black female came to an apartment building in Kansas City and gained entrance on the pretext of looking for an apartment to rent. While inside the building, the pair attacked, robbed and murdered Daniel Tolle, an employee of the apartment owner. A resident of the building, Ruby Earnest, saw the two persons enter and later flee from the building. She identified appellant as the black male and Clarica Capelton as the black female, the perpetrators of the crime. The only issue at trial was the identity of appellant as the male companion of Clarica Capelton.

The first point raised on this appeal concerns a fragmentary statement given the police by Clarica Capelton. She was arrested after being identified from photographs displayed to the witness, Ruby Earnest. Capelton at first waived her rights to remain silent and in response to questions by detective Pilgrim, she stated that the murder had been committed by a man known to her as "Ferquan." An array of photographs was displayed and Capelton selected the photo of Hubert Holmes as Ferquan. Capelton also told the detective that two or three weeks before the murder, Ferquan had telephoned her to ask her if she would join him in robbing a white man who was known to carry large sums of cash. On the day of the murder, Capelton said Ferquan had come for her in his automobile, but at this point in the interrogation, Capelton broke off the interview and requested the opportunity to speak to her lawyer.

The details of the exchange between detective Pilgrim and Capelton were disclosed in questioning of Pilgrim outside the hearing of the jury. Pilgrim emphasized that

Capelton had not admitted any responsibility for the crimes and had refused to say where she went or what occurred after she joined Ferquan in his automobile. The jury was aware, however, that witness Earnest had identified Capelton as the female involved in the crime.

Capelton was called as a witness for the defense. She acknowledged that she had been arrested and charged with the Tolle homicide and had been questioned by detective Pilgrim. Beyond that, she refused to answer further questions asserting her right not to incriminate herself. Appellant then called detective Pilgrim and sought to place in evidence the content of his interview with Capelton through the medium of Pilgrim's interrogation report. The state's objection to the report as hearsay was sustained.

Appellant contends the evidence of Capelton's statements to Pilgrim was admissible as a hearsay exception because the statements constituted admissions against Capelton's penal interest and were supported by substantial indicia of reliability. Appellant cites *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981), among other cases.

■ As a general rule in Missouri, declarations against penal interest by a third party are not admissible as an exception to the hearsay rule in criminal proceedings. *State v. Nunn*, 697 S.W.2d 244, 246 (Mo. App.1985). This rule is subject, however, to the requirement for admitting such statements under circumstances defined in *Chambers v. Mississippi, supra.* That opinion held such statements to be admissible as a due process right of the accused if the statement were made under conditions which provided assurance the statement was reliable. Those circumstances present

in *Chambers* included spontaneity of the statement, a later confession by the declarant, his proven ownership of a gun similar to the murder weapon, and observation of the declarant in possession of a gun immediately after the homicide. *Chambers, supra*, 410 U.S. at 300, 93 S.Ct. at 1048. The significance of the *Chambers* opinion in relation to Missouri decisions which deny admission in evidence of extra-judicial third party confessions is that federal due process requires admission of such evidence when buttressed by collateral and substantial proof that the statement is reliable. Reliability is not established under *Chambers* merely by showing the statement to be against the penal interest of the declarant.

The Missouri Supreme Court discussed *Chambers* in *State v. Turner, supra*, 623 S.W.2d at 9, and observed that opening the door to extra-judicial confessions made by one not a party to the proceeding held inherent dangers. The rule of *Chambers* was to be limited to facts presented there and would not justify a general abrogation of Missouri doctrine against admission of third party confessions. The court also emphasized that in addition to a showing of substantial indicia of reliability, the hearsay admission against penal interest would be admissible in evidence only if the declarant's acknowledgment of complicity would, if true, exonerate the accused. *Turner, supra*, 623 S.W.2d at 9.[1]

■ The first obstacle to admission of Capelton's hearsay declaration under the doctrine of *Chambers* is that the statement did not amount to a confession of Capelton's guilt for the crime with which appellant was charged. At most, the statement amounted to an acknowledgement by Capelton of some degree of complicity in the acquisition of information about the pro-

1. The opinion in *Chambers* does not condition admission of the hearsay statement on its evidentiary value as proof that if the declarant is guilty, the defendant must in consequence be innocent. Under the facts in *Chambers*, however, such was the result. The opinion in *Turner* expressly limits the application of *Chambers* to cases of similar facts and, as we construe it, only to instances where the declarant's complicity necessarily absolves the defendant of guilt. In effect, the Missouri Supreme Court has added this condition not expressly annunciated in the *Chambers* holding but compatible with the facts of that case. This court is bound by *Chambers* and *Turner* and each provides a basis to reject the hearsay statement from admission in evidence in this case.

spective event and the identity of the guilty party. Arguably, the information Capelton gave to detective Pilgrim was strongly suggestive of Capelton's participation in the crime. Her participation, however, was not admitted in the statement and is no more than a suspicion inferred from the information she supplied. The argument for admission of the hearsay declaration in *Chambers* was based on the general exception to the hearsay rule which attributes reliability to a statement made against the interest of the declarant. This is founded on the assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made. *Chambers, supra,* 410 U.S. at 299, 93 S.Ct. at 1047. Unless the declarant has admitted participation in or responsibility for the crime, the statement is not an admission against interest and is therefore excludable generally as hearsay.

In this case, Capelton did not say she was involved with Ferquan in the commission of the crimes or even that she was in his company when any criminal acts were committed. She admitted only to having information about the proposed robbery and the identity of the perpetrator. This is not within the fact situation of *Chambers,* to which Missouri courts are limited by *Turner,* and certainly does not qualify as a confession. Capelton's statement did not meet the test of an admission against penal interest and was properly excludable as hearsay.

Secondly, the court in *Turner* has limited application of the *Chambers* rule to those situations in which the declarant's complicity would, if true, exonerate the accused. Here, even if it be assumed for purposes of the point that Capelton's statement was an acknowledgement of complicity in the murder, it does not thereby follow that appellant was innocent. All the evidence pointed to the participation of two persons in the crime, Capelton and a black male. The mere fact that Capelton admitted to being one of the suspects, if her statement be so construed, does not exonerate appellant. The two circumstances, the participation of Capelton and the guilt of appellant, are neither inconsistent nor incompatible. The condition for admission of the statement under *Turner* is therefore not satisfied.

Finally, the extra-judicial statement by Capelton was unsupported by collateral indicia of reliability which *Chambers* requires. There was no evidence presented tending to substantiate the identification of Ferquan as the killer nor was there any assurance that at the time the statement was made, Capelton was most apt to have been speaking truthfully. The excluded statement was merely an unverified and gratuitous assertion that the guilty person was someone other than appellant.

Appellant argues that testimony by his alibi witness contributed proof the Capelton statement was reliable because evidence appellant was elsewhere when the crime was committed was consistent with Capelton's identification of Ferquan. Of course, any evidence which tended to exonerate appellant would be consistent with Capelton's statement that another party was the killer, but consistency is not the test. The question is whether other evidence corroborates the content of the extra-judicial declaration and therefore tends to show the reliability of the statement.

Here, the alibi witness made no claim to knowing Ferquan, much less where he or Capelton may have been on the day of the crime. That evidence therefore did not substantiate any item in Capelton's statement. Moreover, the question of where appellant was when the murder was committed was a disputed fact issue in the case. Appellant's alibi was controverted by the testimony of the state's identification witness and, thus, the purported corroboration was itself in doubt. It necessarily follows that no indicia of reliability attended the third party declaration.

For all of the foregoing reasons, the *Chambers* rule was inapplicable to Capelton's extra-judicial statement. The trial court correctly denied admittance of the statement in evidence.

Appellant's second point complains that the prosecutor improperly attempted during voir dire and in closing argument to define reasonable doubt and the court erro-

neously overruled the defense objections. The argument is supported by citation of cases such as *State v. Lumsden,* 589 S.W.2d 226 (Mo. banc 1979), *cert. denied,* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980), which condemn efforts by the court or counsel to elaborate upon the definition contained in the approved instructions.

The particular facts of this case are that during voir dire, the prosecutor told the jury panel that proof beyond a reasonable doubt is proof that leaves the jury firmly convinced of the defendant's guilt. There was no objection to this statement. The prosecutor then said, "Again, on the other side of that, the law does not require proof that overcomes every possible doubt." The defense objected to the latter remark and the objection was overruled. The other comment on reasonable doubt came during closing argument when the prosecutor said that proof beyond a reasonable doubt is not proof beyond all doubt. The objection to this statement was also overruled.

■ We note first that trial courts have broad discretion in controlling voir dire examination and closing arguments and rulings on questions in these areas will not be disturbed except upon a manifest abuse of discretion. *State v. White,* 722 S.W.2d 92, 95 (Mo.App.1986); *State v. Grady,* 691 S.W.2d 301, 303 (Mo.App.), *cert. denied,* 474 U.S. 951, 106 S.Ct. 317, 88 L.Ed.2d 301 (1985). Also, although discussion of reasonable doubt is not encouraged, it will not constitute reversible error so long as counsel does not attempt to substitute his own definition. *State v. Herndon,* 670 S.W.2d 32, 36 (Mo.App.1984).

■ The statements made by the prosecutor in this case are within the permitted area of discussion. The words used were apparently chosen carefully because they parallel the exact language of the instructions. It can scarcely be deemed error for an attorney to repeat to the jury, even segmented as was done here, the language of the approved instructions. We find no abuse of the trial court's discretion in its rulings on this subject.

In his third point, appellant contends the court erred in permitting a witness for the state, Carla Robinson, to testify that appellant had threatened her with a shotgun. He argues that this was evidence of another crime and should not have been permitted because the assault was not related to the crimes for which appellant was then being tried.

At the time the homicide charged in this case was committed, appellant was unemployed and was living with Carla and her two small children. Carla testified that the night of March 17, 1986, appellant had a "wad of money" and on the following day, he admitted to her his guilt in the robbery and homicide. This information was not given to the police, however, until May 8, 1986. On cross-examination, the defense established that a dispute had occurred between Carla and appellant on May 7, 1986, when Carla learned appellant was also engaging in relations with a neighbor girl. The thrust of the cross-examination was to suggest that Carla had fabricated the account of appellant's guilt in retaliation for his infidelity.

During redirect examination of Carla, the state elicited details of the May 7 dispute and brought out that appellant had threatened Carla with a shotgun. The defense objected on the ground that testimony about the weapon related to another crime not charged, an assault against Carla, and should not be admitted. The objection was overruled. Citing *State v. Cleveland,* 583 S.W.2d 263 (Mo.App.1979), and *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304 (banc 1954), appellant argues that the evidence of the assault was of a separate and distinct crime; it was prejudicial and had no legitimate tendency to establish appellant's guilt for the crime with which he was charged.

The situation here is similar to that reported in *State v. Neverls,* 702 S.W.2d 901 (Mo.App.1985). There, the objection was to admission of evidence that the victim of an assault had previously obtained a restraining order against the defendant because of his threats and harassment. The subject of the victim's encounters with the defendant was first addressed during cross-examination when inquiry was made of the vic-

tim as to her practice of honking her automobile horn when she reached her home. The purpose, she said, was to summon her son to watch her walk safely from the car to the house. An explanation was properly allowed on redirect including a description of the victim's previous encounters with the defendant and the resulting restraining order to remove inferences which arose during cross-examination. The court held that when the defense questioned the victim about this conduct, the door was opened for the witness to give reasons and an explanation.

In the present case, when the defense cross-examined Carla about her dispute with appellant, it was proper for the prosecutor to inquire into all details of the affair, including appellant's use of the shotgun. Moreover, it would seem that appellant could scarcely claim prejudice from this line of inquiry. The fact that appellant threatened Carla with a weapon would tend to enhance her animosity and thus offer added reason for a desire to retaliate. The objection was properly overruled.

The fourth point concerns a show-up report which was an exhibit listing the names and physical characteristics of five black women exhibited to Ruby Earnest and from which she identified Clarica Capelton. Appellant argues that the exhibit was erroneously admitted in evidence because it was hearsay and could not properly have been received to bolster the eye witness identification of Capelton made by Earnest.

Appellant bases his hearsay argument on the fact that detective Pilgrim, who testified about the report, did not prepare it and therefore his evidence was drawn only from the report. The evidence established, however, that the show-up was conducted jointly by Pilgrim and the other detective and therefore Pilgrim was testifying from his own knowledge and observation concerning the witness's identification. It is true that former cases precluded this type of evidence offered to support or emphasize extra-judicial identification of suspects by witnesses. The opinion in *State v. Harris*, 711 S.W.2d 881 (Mo. banc 1986), however, altered the rule. Under *Harris*,

711 S.W.2d at 884, a police officer who witnesses an identification is equally competent to testify about the event as is the identifying witness. The point lacks any merit.

Finally, appellant contends that pattern instructions MAI–CR2d 1.02 and 2.20 improperly define reasonable doubt in that they reduce the state's burden of proof below that required by Art. I, § 10 of the Missouri Constitution and the Fourteenth Amendment to the United States Constitution.

This point has been rejected in *State v. Guinan*, 732 S.W.2d 174 (Mo. banc 1987). The Supreme Court has confirmed that the instructions correctly state that applicable law. This court is bound by that decision.

The judgment is affirmed.

All concur.