STATE of Missouri, Respondent,

v.

Edward CLAYPOOL, Appellant.

No. 53784.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 6, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 4, 1989.

Application to Transfer Denied ·
Feb. 14, 1989.

Michael D. Burton, St. Louis, for appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant Edward Claypool was convicted by jury of robbery in the first degree, § 569.020 RSMo 1986, and sentenced as a prior offender to twenty years imprisonment. Defendant claims three points of error. He contends the trial court erred by: (1) allowing a police officer to testify as to extrajudicial witness identifications of the defendant; (2) allowing the officer on redirect to testify as to the victim's account of the crime as recorded in the officer's police report; and, (3) refusing to admit two police reports into evidence. We affirm.

In the early morning of December 25, 1986 two men robbed Leroy Winston at gunpoint. Mr. Winston had parked his car on the street and was walking towards his home when two men approached him from behind, put a gun in his back, and told him to "[b]e still, old man, and you won't get hurt." The two men took Mr. Winston's watch, ring, and wallet, which contained approximately $50. The two men pushed Mr. Winston into his car, drove the car approximately ten blocks, and then let him out of the car. Mr. Winston walked home and sometime after he arrived home his wife called the police.

Two police officers went to Mr. Winston's home later that day to take his statement about the robbery. Mr. Winston told the officers that two men had attacked him and taken $50 in cash. The report did not contain any statement from Mr. Winston that a watch or ring had been stolen. Mr. Winston gave a description of the two men to the police, but he did not say he recognized either of his attackers.

On December 29, 1986, Mr. Winston talked with a third police officer, Detective Brogan, about the crime. This time, Mr. Winston reported several men had attacked him. He also said he recognized the robbers as two men from the neighborhood. Mr. Winston told the officer that one of the men who robbed him was known as "Nookie," or Edward Claypool, the defendant. He also reported that a watch and a ring had been taken along with the money. Mr. Winston told Detective Brogan that at the time of the robbery he had been "nearly scared to death," and had neglected to provide the police with all of this information.

The police later arrested defendant. Mr. Winston identified him in a police lineup. Two of Mr. Winston's neighbors, Cervie Jackson and Juanita Lee, witnessed the robbery. Some months later both identified defendant in a photo array.

At trial, Mr. Winston testified two men robbed him in the early morning of December 25, 1986. He stated there was an overhead streetlight and a porch light on at the time of the robbery giving him sufficient lighting to view his attackers. Mr. Winston identified the defendant as one of the attackers. He also testified the two men had taken a ring, a watch and $50 in cash from him.

Juanita Lee and Cervie Jackson testified. Both women stated they had witnessed the robbery and although their testimony differed as to the time of the robbery, the exact location of Winston's car and which robber pushed Winston into his car, both identified the defendant as one of the men who robbed Mr. Winston. Ms. Lee stated she was looking out of her window a little after midnight and "I seen Nookie [defendant] pushing Leroy [Winston] in the back of the car and his friend jumped in on the other side, and Nookie got in the car and drove off with it." She said the street lights were on, giving her sufficient lighting to view the robbery, and identified defendant. Ms. Jackson testified she looked out of the window at her home and "I saw them putting Leroy [Winston] in the back of the station wagon and closing the door." She stated she recognized defendant as one of the men who robbed Mr. Winston. Ms. Jackson testified the robbery had occurred at approximately 8:30 or 9:30 in the evening of December 24, 1986.

Detective Brogan testified Mr. Winston had identified defendant in a police lineup and Cervie Jackson and Juanita Lee had identified defendant in a photo array. Brogan also testified that after arresting defendant, the police seized a watch from him, and Mr. Winston identified the watch as the one which was taken from him on December 25, 1986. On redirect, Brogan testified about some of the statements contained in his police report, including statements from Mr. Winston regarding the identity of the men who robbed him and what items were taken during the robbery.

Defendant's first claim on appeal is that the trial court erred in permitting Detective Brogan to testify regarding Ms. Jackson and Ms. Lee's extrajudicial identifications of defendant. He claims the testimony of the victim and the two eyewitnesses was contradictory and the officer's testimony improperly bolstered the identification testimony. Defendant relies on *State v. De-*

*graffenreid,* 477 S.W.2d 57 (Mo. banc 1972) as a primary authority. Brogan's testimony was admitted over a hearsay objection. Ms. Jackson and Ms. Lee had previously testified about these same matters. The claimed contradictions related to the time of the crime, the location of Winston's car and which robber pushed Winston into his car. The ladies did not agree on these details. However, the positive identification of defendant by Winston and by both eyewitnesses was not inconsistent or contradictory.

This issue was considered and decided in *State v. Harris,* 711 S.W.2d 881 (Mo. banc 1986). In *Harris,* the court stated "[t]here is no logical distinction between the victim's testimony and that of another person. To the extent that the *Degraffenreid* rule distinguishes these two classes of testimony based on hearsay considerations, the case is no longer followed." *Harris,* 711 S.W.2d at 884. The *Harris* court recognized that the primary concern involving third party testimony of suspect identification is that such testimony may bolster the identifying witness' testimony, but held that when the third party is subject to cross-examination such testimony is not inadmissible. *Id.* at 883–85. *See also, State v. Lloyd,* 750 S.W.2d 589, 591–92 (Mo.App. 1988); *State v. Farmer,* 719 S.W.2d 922, 925–27 (Mo.App.1986).

■ A police officer may testify, without improperly bolstering witness testimony, about an identification made by a witness if the officer viewed the identification procedure. *State v. Acklin,* 737 S.W.2d 743 (Mo.App.1987). In *Acklin,* the trial court allowed the prosecution to admit into evidence a show-up report utilized by a witness who made an extrajudicial identification. A police detective testified regarding the contents of the report. The objection was hearsay and bolstering. The court rejected the argument solely on the authority of *Harris. Id.* at 748.

■ Here, Detective Brogan witnessed the photo identification of the defendant by both Ms. Lee and Ms. Jackson. He was therefore competent to testify as to the identifications. Both ladies were previous trial witnesses. Defendant had the opportunity to cross-examine the identification witnesses and Detective Brogan. Brogan's testimony did not improperly bolster the identification testimony of Ms. Lee and Ms. Jackson. Nor did it deprive defendant of the contention that the identifications were arguably suspect because of related "contradictions" because: (1) Winston and the identification witnesses all knew the defendant from the neighborhood, and (2) the testimony of Brogan did not rebut any inconsistencies. The issue of reliability of identification was not unfairly tried. Defendant's first claim of error is rejected.

Defendant's second claim is that the trial court erred in allowing Detective Brogan to testify as to the account of the crime given to him by Winston, as contained in his police report. The complaint is improper bolstering of Winston's credibility.

■ Brogan's testimony about statements contained in his police report came out on redirect examination. A trial court has great discretion in the extent of redirect, and reversal is mandated only upon a showing of an abuse of discretion which prejudiced the defendant. *State v. Thomson,* 705 S.W.2d 38, 40 (Mo.App.1985). Here, the trial court did not abuse its discretion in admitting the testimony offered on redirect after the officer was cross-examined about the contents of two police reports. Detective Brogan referred to his police report on redirect only after defense counsel had questioned him about information contained in the report during cross-examination. Defendant opened up this line of questioning and the trial court did not err in allowing the state to rehabilitate the witness with statements contained in the report.

During cross-examination defendant highlighted the differences in Winston's abbreviated original report of the crime and the expanded report given to Detective Brogan four days later. Defendant relied on inconsistencies in the two reports. The redirect examination was intended to counter this tactic by evidence of prior consistent statements.

■ A prior inconsistent statement to impeach may be rebutted by prior consist-

ent statements to the extent necessary to counter the subject on which a witness has been impeached. *State v. Clark*, 711 S.W. 2d 928, 933 (Mo.App.1986). During cross-examination defense counsel questioned Detective Brogan about information contained in the two police reports regarding the number of people Mr. Winston claimed had attacked him and exactly what property Mr. Winston had reported as stolen. Defense counsel offered two different police reports as exhibits. The police report dated December 25, 1986, contained a statement from Mr. Winston that two men had robbed him and said nothing about Mr. Winston recognizing either man. In this report Mr. Winston only reported $50 was taken in the robbery. The police report dated December 29, 1986, taken by Detective Brogan, contained a statement from Mr. Winston that several males attacked him and that he recognized the men and knew one of their names. In this report Mr. Winston stated the $50, a ring, and a watch were all taken during the robbery. These statements did not expressly contradict each other.

On cross-examination Detective Brogan admitted to differences between the two police reports. On redirect, the trial court allowed the state to read portions of Detective Brogan's report which were consistent with Mr. Winston's in-court testimony. The trial court did not allow the prosecution to refer to any other police report on redirect and advised the jury none of the statements in the report were to be considered as evidence. This served to confine the redirect to matters of witness credibility.

Detective Brogan read the statements in which Mr. Winston said he recognized the men who attacked him, he knew the name of one of the men, and at the time of the robbery he was scared and failed to provide the police with all of this information. These statements were proper to counter the subjects on which Winston was impeached during Brogan's cross-examination and to explain the differences in the statements Mr. Winston gave to the police. By questioning Detective Brogan about the differences between the reports, defense counsel put the meaning of the differences

in the police reports at issue. The trial court did not err in allowing the state to rehabilitate Winston's testimony by showing a correspondence between Detective Brogan's report and Mr. Winston's trial testimony. *See, State v. Taylor*, 742 S.W. 2d 625, 628–29 (Mo.App.1988). Point two is without merit.

Defendant's third claim of error is that the trial court erred in excluding the two police reports from evidence. The reports contained different statements Mr. Winston gave to the police. Defendant claims the reports should have been admitted as Business Records in order to show the discrepancies between the reports. There is some inconsistency in this claim of error and the second claim of error. Here, defendant claims a right to give two police reports to the jury, as exhibits. In point two he claimed error in permitting Detective Brogan to testify about part of the second report. At the least this supports our conclusion on Point II.

Police reports may be admitted as evidence to impeach a witness with prior inconsistent statements, for such statements used for impeachment are not considered hearsay. *State v. Jordan*, 664 S.W.2d 668, 672 (Mo.App.1984). Here, however, the defendant did not specifically offer the police reports to prove prior inconsistent statements of a witness, but to demonstrate the different information contained in the reports. At trial, defense counsel argued that:

> I would submit to the Court that these police reports are not being offered for truth of what they contain or for the fact that they contain hearsay items but simply *so that the jury can see the inconsistencies* that we have developed between the police report that was prepared on December 29th bearing Officer Brogan's signature and the police report that was prepared on Christmas Day bearing Officer Bernard's signature....We aren't admitting them [the police reports] to take the place of the testimony but merely so that the jury can see that there are two different reports prepared. (Our emphasis).

The trial court refused to admit the reports into evidence, stating that the issue at trial

was not the accuracy of the police reports but whether defendant had robbed Mr. Winston.

■ Apart from any technicality regarding the purpose in admitting the reports, we reject Point III because exclusion of the reports was not prejudicial. The trial court excluded the reports. However, the statements contained in both police reports were fully developed during the trial. Mr. Winston and Detective Brogan were cross-examined at length about statements contained in the reports. The trial court did not preclude any inquiry by cross-examination regarding the statements made in the reports. By excluding the reports the court did not withdraw the issue of differences or inconsistencies, if any, from the jury. The jury heard all the facts necessary to consider the issue. The differences in the reports were a constant and recurring topic throughout the trial. There was no factual dispute about the differences in the reports. On these facts we will not say that the trial court abused its discretion in excluding the police reports from evidence.

We affirm.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.