**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Michael C. WARD,
Defendant/Appellant.**

**STATE of Missouri,
Defendant/Respondent,**

v.

**Michael C. WARD, Plaintiff/Appellant.**

Nos. 53771, 55410.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 28, 1989.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Jan. 3, 1990.

Application to Transfer Denied
Feb. 13, 1990.

Holly G. Simons, Asst. Public Defender, David C. Hemingway, St. Louis, for Michael C. Ward.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for the State.

SATZ, Judge.

Defendant, Michael Ward, was indicted on a charge of acting with Edward Claypool in the First Degree Robbery of Leroy Winston. § 569.020, RSMo 1986. A second count charged defendant with Second Degree Robbery in an unrelated incident. The trial court severed Count II and, then, tried defendant and Claypool in a joint trial. Defendant was convicted and sentenced to a term of twenty years on the first Count. Defendant pleaded guilty to the second Count and was sentenced to a term of

fifteen years to run concurrently with the twenty year sentence.

Defendant filed motions for post conviction relief from the sentences imposed against him after his trial and after his guilty plea. These motions were denied. Defendant appeals from the sentence imposed after trial and from the denials of his motions for post conviction relief. We affirm.

Defendant does not contest the sufficiency of the evidence at trial. On Christmas Eve, 1986, around midnight, two men came up behind Leroy Winston as he was locking his car. One put a gun in Mr. Winston's back and the other said, "be still, old man, and you won't get hurt." Mr. Winston glanced back, saw and recognized defendant and Claypool as the two men he had previously seen walking together in his neighborhood. Claypool went through Mr. Winston's pockets and removed his wallet, car keys, and about fifty dollars. Claypool also took Mr. Winston's ring and a wristwatch. The area was well lighted at the time.

The defendant and Claypool then pushed Mr. Winston in the back seat of his car, got in and drove him about ten blocks from his house. Defendant and Claypool then ordered Mr. Winston out of the car, and he walked home. While in the car, Mr. Winston was seated in the back seat next to defendant, and Mr. Winston had approximately ten to fifteen minutes to observe him.

The next morning defendant and Claypool appeared at Mr. Winston's home and returned his car keys. On December 29, Mr. Winston identified defendant and Claypool, in a lineup, as the men who robbed him. In the lineup, Claypool was wearing the watch he had taken from Mr. Winston.

### Direct Appeal

Prior to trial, defendant filed a motion to sever his trial from that of Claypool's because, defendant alleged, there was inculpatory evidence admissible against Claypool but inadmissible against him. The

motion was denied. On appeal, defendant contends the admission of this evidence violated his right to severance guaranteed by § 545.880 RSMo 1986 and Rule 24.06, and, in turn, violated his right to due process and right to a fair trial. We disagree.

Section 545.880.2 provides that, upon written motion, the court "shall" order severance of co-defendants for trial, if the court finds "the probability of prejudice exists in a joint trial." The statute requires the court to find the probability for prejudice exists if:

. . . .

(2) There is, or may reasonably be expected to be, material and substantial evidence admissible against less than all of the joint defendants;

(3) There exists an out of court statement of a codefendant which makes reference to another of the joint defendants, but is not admissible against that defendant, and if the statement cannot be properly limited so as to eliminate reference to the complaining defendant;

(4) Severance of the joint defendants is necessary to achieve a fair determination of guilt or innocence of any defendant.[1]

Tracking these provisions in his pretrial motion, defendant alleged:

[T]here is evidence admissible against Mr. Claypool, to wit that he returned a wristwatch allegedly belonging to the victim, and at the same time made a statement indicating his involvement in robbery of the victim, which is inadmissible against defendant Ward.

Detective Richard Brogan testified about this objected to evidence both at the hearing on defendant's pre-trial motion and at trial. After the lineup and after Detective Brogan had explained to Claypool his *Miranda* rights, Claypool made a statement to Brogan which Brogan related at trial in basically the same language Brogan used at the hearing on the pre-trial motion. Brogan testified:

[Prosecutor]: What, if anything, did Mr. Claypool tell you about this matter?

---

1. Rule 24.06 tracks these provisions.

[Brogan]: After I explained to him what occurred and what's happened, he said that he did not want to go to jail and that he would give the man back his stuff. And then he gave me the man's wristwatch off his wrist.

Q: Did you ask him anything about a gun being involved in this matter?

A: I did.

Q: What did he say about that?

A: He said there was a .22 revolver involved, and he does not have the gun.

Section 545.880.2 is primarily designed to protect a defendant from being convicted of a crime in a joint trial on evidence which would be inadmissible against him if he were tried separately. Thus, whether paragraph (2) or (3) of § 545.880.2 requires severance in this case initially turns on whether Claypool's hearsay statements to Detective Brogan, admissible against Claypool as an "admission" exception to the hearsay rule, are also admissible against defendant under another exception to the hearsay rule. The state contends there is another exception: the co-conspirator exception to otherwise objectionable hearsay, even though defendant was charged with the completed crime of robbery and not a conspiracy to commit robbery.

■ In criminal law, conspiracy and complicity can exist separately. Normally, however, the two go hand-in-hand. Thus, in Missouri, the evidentiary rules governing the admissibility of the statements of one conspirator against another conspirator are also applied to accomplices, even though the latter are not charged with a conspiracy but are charged with the commission of a crime. *See, e.g. State v. Pizzella,* 723 S.W.2d 384, 388 (Mo. banc 1987). Statements of a co-conspirator made during and in furtherance of the conspiracy are admissible against another conspirator. *State v. Frederickson,* 739 S.W.2d 708, 711 (Mo. banc 1987). But, statements and acts of a co-conspirator made after the termination of a conspiracy are inadmissible against another conspirator, unless the statement was made for purposes of continuing the conspiracy, i.e. to conceal the conspiracy, to defeat the prosecution. *E.g., State v. Smith,* 631 S.W.2d 353, 360 (Mo. App.1982); *State v. Browner,* 587 S.W.2d 948, 955 (Mo.App.1979).

■ Claypool made his statements to Brogan after the crime was completed. The state contends the statements were, nonetheless, admissible as an attempt to conceal the conspiracy between Claypool and defendant because Claypool did not refer to defendant in these statements.

The state reads too much into Claypool's failure to refer to defendant. Rather than trying to protect defendant by concealing a conspiracy, Claypool, driven by a thief's strongest urge, was simply trying to protect himself by confessing. The only phrase missing from making his statement an express confession was: I robbed Mr. Winston. Therefore, Claypool's straightforward expression of self-protection does not fit within the co-conspirator's exception to the hearsay rule.

However, even though Claypool's statements would be inadmissible against defendant if he had been tried separately, neither paragraph (2) nor (3) of § 545.880.2 required severance in this case.

■ Paragraph (3) is simply a statutory reflection of the *Bruton* rule. In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), a nontestifying co-defendant's confession naming the other defendant as a participant in the crime was introduced at their joint trial. The court held the introduction of the co-defendant's confession violated the other defendant's right to confrontation guaranteed by the Confrontation Clause of the Sixth Amendment. 391 U.S. at 126, 88 S.Ct. at 1622. As a corollary, there is no *Bruton* problem if the confession or admission of one defendant does not refer to the other defendant. *E.g. United States v. Hicks,* 524 F.2d 1001, 1003 (5th Cir.1975), cert. denied 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976). This corollary is reflected in paragraph (3) which requires severance if, but only if, the co-defendant's out-of-court statement "makes reference" to the other defendant. Here, Claypool's statements made no refer-

ence to defendant, and, thus, paragraph (3) did not require severance here.

As to paragraph (2), it requires severance if there is "material and substantial evidence against less than all of the joint defendants." Here, the "evidence" in question is Claypool's out-of-court statements, which are inadmissible against defendant and, thus, "admissible against less than all of the joint defendants." But, paragraph (2) leaves unanswered the question: against whom must the evidence be material and substantial in order to require severance. Clearly, Claypool's statements are "material and substantial" against him. Therefore, if paragraph (2) merely requires the evidence in question be "material and substantial" against one of the joint defendants, it requires severance here. However, we read this paragraph as requiring severance only if the out-of-court statements are material and substantial against the defendant moving for severance.

As noted above, the purpose of the statute is to protect defendants in joint trials from being convicted on evidence that would be inadmissible against them in a separate trial. The evidence which poses the greatest danger in this regard is evidence that is material to the moving defendant. If the statute required severance when evidence material to any defendant was inadmissible against fewer than all, many cases would have to be needlessly severed. For example, trials frequently involve multiple defendants and multiple counts. If there is evidence that is material to only some of those counts, any defendants not charged in those counts would automatically be entitled to severance even if the evidence could not possibly prejudice them in a joint trial.

Whether Claypool's statements were material and substantial against defendant is another question which must be resolved. Facially, the answer is: No. Claypool's statements, by themselves, do not have any materiality on the issue of defendant's guilt. However, when linked with evidence showing that defendant was present when Mr. Winston was robbed, the statements do become material and substantial against defendant.

Paragraph (2) does not say whether the evidence must be material on its face, or, whether it is sufficient if the evidence becomes material when connected with other evidence at trial. We need not answer that question, however, because defendant never argued to the trial court that the evidence is material and substantial in the context of all the evidence. The pretrial motion and its restatement at the close of the state's case only alleges the statements are material and substantial; there is no attempt to show the statements are material and connected with other evidence. Moreover, in parallel fact situations under the *Bruton* rule, statements made material to the nonmoving defendant only by linkage with other evidence do not require severance. *E.g. United States v. DiCarlantonio,* 870 F.2d 1058 (6th Cir.1989).

Furthermore, we need not rely solely on this analysis. The evidence against defendant is overwhelming. Mr. Winston identified defendant as the man who put a gun to his head. Defendant and Mr. Winston were seated next to each other in the back of Mr. Winston's car for ten minutes. The area around the scene of the robbery was well lit. Juanita Lee, a witness to the robbery, corroborated Mr. Winston's identification. Defendant and Claypool returned to Mr. Winston's house the next morning to return the car keys.

■ We do not believe § 545.880.2 was meant to place blinders on us when we review the trial record and require us to reverse an otherwise valid conviction automatically if evidence is erroneously admitted in a joint trial of defendants. Here, the properly admitted evidence of guilt was overwhelming. If the admission of Claypool's statement was error, it was harmless. *State v. Whitley* 750 S.W.2d 728, 730 (Mo.App.1988).

Defendant also contends the trial court erred in failing to strike a venire member. While the court was reading Instruction MAI–CR3d 300.02, the following exchange took place:

The Court: Yes. Is that Miss Harris?

Venirewoman Harris: Yes. I find it very difficult to be in this case, because I have once been robbed, and very difficult for me to understand and, rather, not understand but to really stay in this case, because it has been a difficult time for me to overcome the case in which I was robbed.

. . . .

The Court: And you don't feel that you can still set this aside and make a judgment based solely on the facts as you hear them from the stand and the law as given by this Court? You think that this prior experience would so affect you that you could not follow the law or make a decision based upon the law?

Venirewoman Harris: I can. I'll try, at least.

The Court: Well, ma'am—

Venirewoman Harris: It will be very difficult.

During the state's voir dire, the following exchange took place:

[Prosecutor]: All right. Let me ask you this, ma'am. Because of that you stated you didn't think that you could be— well, I think you did tell the judge you couldn't be fair?

Venirewoman Harris: Yes.

[Prosecutor]: You've heard—we've been talking quite a bit, and you know that as a juror you have to determine whether they're guilty or not guilty based on the evidence that comes from the witness stand and nothing else.

Venirewoman Harris: Yes.

[Prosecutor]: Okay. Would you be able to do that?

Venirewoman Harris: I'll try.

[Prosecutor]: Okay.

Venirewoman Harris: Best of my ability.

[Prosecutor]: All right. All right. And, you know, you can't totally forget about your past life. Anybody nobody can do that, but we want you to be able to concentrate on the evidence and make that determination based on the evidence you hear in this courtroom. Do you think you could do that?

Venirewoman Harris: Yes.

During voir dire by Claypool's counsel, the following exchange took place:

[Counsel]: [A]re you concerned that the fact that you were robbed might be something that you might consider if you're selected as a juror in determining whether or not a person was actually guilty or not guilty?

Venirewoman Harris: No, I think I can consider—I think I would consider, you know, actually just leave it blank and then figure out from the testimony.

[Counsel]: Okay. So now you—let me make sure I understand correctly. Now you're saying you can set that aside, that robbery?

Venirewoman Harris: Aside. I think I can. And I'm saying I think I can. . . . I've considered it since I've been sitting here.

[Counsel]: Okay. You kind of collected your thoughts and said—

Venirewoman Harris: Yes.

[Counsel]: —"Well, I know that's something different. And not that's something that I'm not going to let affect my decision as a juror."

Venirewoman Harris: That's right.

After voir dire, defendant moved to strike Ms. Harris, arguing that her first statement that she could not be fair was most truthful. The court denied the motion. On appeal, defendant contends Ms. Harris never unequivocally stated she could be impartial. We disagree.

■ The qualifications of a prospective juror are determined by the entire voir-dire examination of the juror. *State v. Murray*, 744 S.W.2d 762, 769 (Mo. banc 1988). The trial court has broad discretion in ruling on qualifications of a juror and a ruling will not be disturbed on appeal absent a clear abuse of discretion. *State v. Hopkins*, 687 S.W.2d 188, 189 (Mo. banc 1985). Here, the record shows two unequivocal statements by the juror that she could base the verdict on the evidence in the case and put her own experiences aside. Thus, the record refutes defendant's argument that Ms. Harris never unequivocally stated she

could be impartial. There was no abuse of discretion. *See State v. Johnson,* 744 S.W.2d 868, 870 (Mo.App.1988).

Defendant's next contention is neither clear nor explicit. As we understand it, defendant contends the trial court erred in excluding a police report, co-defendant Claypool's Exhibit D, from evidence. The purpose of introducing this exhibit, defendant contends, was to impeach Mr. Winston with statements he had made to Detective Brogan.

At trial, both defense counsel requested two police reports be admitted into evidence. These reports were marked as co-defendant Claypool's Exhibits D and E. Among other things, each exhibit contained statements attributed to the victim, Mr. Winston.

Both defense counsel offered these police reports to show the differences between the two reports. Thus, defendant's counsel argued:

> I would submit to the Court that these police reports are not being offered for truth of what they contain or for the fact that they contain hearsay items but simply *so that the jury can see the inconsistencies* that we have developed between the police report that was prepared on December 29th bearing Officer Brogan's signature and the police report that was prepared on Christmas Day bearing Officer Bernard's signature.
>
> . . . .
>
> We aren't admitting them [the police reports] to take the place of the testimony but merely so that the jury can see that there are two different reports prepared, ... by two different police officers, .... (Emphasis added)

Defendant's assertions of error in his motion for a new trial repeats this argument:

> The trial court [erred] when it refused to admit into evidence defendant's Exhibits D and E, ..., the two "original police reports" so that the jury could see they were inconsistent with each other, ..., and indicated that Detective Brogan had attempted to falsify the authentic "original report" of Police Officer John Bernard.

■ Clearly, then, defendant's argument at trial was to introduce both reports, Exhibits D and E, for the purpose of showing the differences and inconsistencies between the two reports. Defendant, at trial, did not proffer Exhibit D alone and did not argue, as he now does on appeal, that the purpose of introducing this exhibit was to impeach the victim, Mr. Winston, with statements he made to Detective Brogan which were inconsistent with the victim's trial testimony. Defendant is bound by the arguments made and the issues raised at trial and may not raise new and totally different arguments and issues on appeal. *State v. Cheek,* 760 S.W.2d 162, 164 (Mo. App.1988). Additionally, we note that the defendants' complaints at trial were discussed and disposed of by this Court in *State v. Claypool,* 763 S.W.2d 313, 317 (Mo.App.1988).

### Denial of Rule 29.15 Motion

At trial, defendant was represented by Mr. Gary Krautmann, an assistant public defender. Co-defendant Claypool was represented by Mr. Michael Burton, an assistant special public defender. The offices of the Public Defender and Special Public Defender are separate offices.

After trial, the trial court appointed Mr. Michael Todt, an assistant special public defender, to represent defendant in processing defendant's Rule 29.15 motion to set aside his trial conviction and sentence. Mr. Todt filed a motion to withdraw as defendant's motion attorney, alleging a conflict of interest. The trial court denied this motion. On appeal, defendant contends the trial court erred in denying Mr. Todt's motion to withdraw.

Defendant makes an intricate argument. He admits that, at trial, Mr. Krautmann, for defendant, and Mr. Burton, for Claypool, relied on "vastly different defenses", but, he argues, these two attorneys frequently relied on the same objections. An attack on Mr. Krautmann's professional competence in making these objections, defendant reasons, would be, in effect, an

attack on Mr. Burton. Since Mr. Burton and Mr. Todt are both assistant special public defenders, defendant argues, Mr. Todt would be called upon to indirectly attack Mr. Burton's professional competence, and, this, defendant argues, created an unacceptable conflict of interest for Mr. Todt.

■ For our purpose here, we will accept defendant's express and implicit assumptions. Defendant still does not prevail. In *State ex rel. Public Defender's Comm'n v. Bonacker*, 706 S.W.2d 449 (Mo. banc 1986), our Supreme Court held there is no per se conflict of interest between attorneys and, in turn, no presumed prejudice simply because a defendant is represented at trial by an assistant public defender and is also represented for post conviction relief by an assistant public defender from the same Public Defender's Office. The indirect conflict of interest urged by defendant here is a weaker argument than the one urged in *Bonacker*.

Moreover, defendant makes only one purported showing of this problem. Defendant contends that both Mr. Burton and Mr. Krautmann failed to object to what defendant characterizes as the trial court's "misleading and prejudicial instruction to the jury that they [sic] could only consider testimony and evidence and disregard the police reports." Had Mr. Todt made this argument on defendant's behalf in the motion for post conviction relief, defendant argues, Mr. Todt "would inherently be attacking [his] own law partner [Mr.] Burton's effectiveness based upon identical conduct."

Defendant's characterization and synopsis of the court's oral instruction to the jury are both incorrect. During the state's re-examination of Detective Brogan about two police reports, Claypool's Exhibits C and D (Exhibit E had not even been marked as yet), and before either Exhibit C or D had been offered into evidence, the trial court quite properly instructed the jury:

> Ladies and gentlemen of the jury, I would like to direct your attention to not only the present questioning that is now going on as it pertains to that police report but all previous questions. Nothing contained in that police report is evidence. It's all hearsay. You heard the evidence from the witnesses who testified, and what they might have told somebody else is not evidence.

Taken in context, defense counsel's failure to object to this oral instruction is understandable and not inappropriate. Furthermore, counsel's failure to object to this kind of instruction to the jury here, no different than any counsel's failure to object to other court instructions to the jury, is not generally cognizable under a Rule 29.15 Motion. *See Drake v. State*, 753 S.W.2d 65, 67 (Mo.App.1988). In addition, we are not required to search the record in an attempt to find meaningful examples to support defendant's contention.

### Denial of Evidentiary Hearing on Rule 29.15 Motion

Defendant also contends the motion court erred in denying him an evidentiary hearing on his claim that his trial attorney was ineffective because his trial counsel failed to call certain "alibi witnesses". The motion court denied a hearing for three reasons: 1) trial counsel endorsed several witnesses, none of whom could testify they were in defendant's presence at the time of the robbery; 2) the motion does not allege what the missing witnesses' testimony would be; and 3) the motion does not allege how the outcome of the trial would be changed.

On appeal, defendant argues that he produced no witnesses at trial; therefore, the trial court had no basis for finding the endorsed witnesses could not testify to defendant's whereabouts. In addition, defendant argues the motion court's statement that defendant failed to allege what the witnesses' testimony would be ignores the meaning of the word alibi.

■ We will assume that merely pleading a failure to call "an alibi witness", without a recitation of the anticipated testimony, would not be fatally defective. Defendant still does not prevail. Among additional failures, he failed to plead his alibi witnesses were available to testify at trial.

*Mathenia v. State,* 752 S.W.2d 873, 876 (Mo.App.1988).

### Denial of Defendant's "Motion" to Set Aside Guilty Plea [2]

In his "motion" to set aside his guilty plea to Count II, defendant alleged that he was "denied effective assistance of counsel [because his] trial counsel coerced [him] into pleading guilty to Count II." The alleged coercion was trial counsel telling defendant that if he did not plead guilty he would receive a 25 year sentence on Count II, consecutive to any sentence imposed on Count I. The trial court found this allegation was refuted by the record and, therefore, denied defendant's motion without an evidentiary hearing.

As part of his argument appeal, defendant contends no transcript of his guilty plea had been prepared prior to the motion court's denial of his motion. Defendant supports this argument with an affidavit of the court reporter, and, by motion, requests leave to file this affidavit with us.

In response, the state, by motion, requests leave to file the transcript of the guilty plea as a supplement to the record on appeal. Defendant opposes this motion, citing *Jackson v. State,* 585 S.W.2d 495 (Mo. banc 1979).

*Jackson* is distinguishable. *Jackson* held that the absence of a record of a guilty plea foreclosed the possibility of meaningful appellate review of a trial court's determination that the plea was voluntarily made. *Id.* at 497. In this case, we would have the transcript before us if we grant the state's motion; thus, there would be no question about meaningful review. Accordingly, we grant both defendant's motion and the state's motion, and we receive, as filed, the court reporter's affidavit and the transcript of the guilty plea.

The transcript of the guilty plea shows:

The Court: Have any threats or promises been made to you in order to obtain this plea of guilty other than the plea bargain?

Defendant: No, sir.

The Court: Do you enter this plea of guilty voluntarily and with understanding of the consequences?

Defendant: Yes, sir.

The Court: Did your attorney explain to you the full range of punishment for this charge?

Defendant: He told me I plead guilty to ten or fifteen, have it ran in with the twenty.

■ This exchange does refute defendant's allegation of coercion. Apparently, as an afterthought, defendant now contends his allegation of "coercion" does not refer to or mean a "threat", but, rather, it means a "mistake, misapprehension or misadvice." To state the obvious, common parlance and legal jargon required the motion court to read "coercion" as meaning a "threat". We cannot fault that court for seeing something that was not there.

Judgment Affirmed.

SMITH, P.J., and STEPHAN, J., concur.

---

**2.** Defendant raises this challenge to his guilty plea in his motion under Rule 29.15, rather than filing a separate motion under Rule 24.035. We discuss the merits of defendant's challenge without deciding the propriety of defendant's procedure.