**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Cornelius THOMPSON, Defendant–Appellant.**

**Cornelius THOMPSON, Movant–Appellant,**

**v.**

**STATE of Missouri, Respondent–Respondent.**

**Nos. 58564, 60249.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 2, 1992.

Application to Transfer Denied
Sept. 22, 1992.

---

Janis C. Good, Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Cornelius Thompson appeals his convictions, after a jury trial, of: (1) first degree robbery, Section 569.020, RSMo 1986; (2) attempted first degree robbery, Section 564.011, RSMo 1986; and (3) armed criminal action, Section 571.015, RSMo 1986. Additionally, Thompson appeals the denial of his Rule 29.15 motion for post-conviction relief, without an evidentiary hearing. We have consolidated Thompson's two appeals, pursuant to Rule 29.15(*l*). We affirm.

The evidence adduced at trial, in the light most favorable to the verdict, is as follows. On July 14, 1989, at approximately 4:15 p.m., Janet Falls purchased money orders and cashed a check at her credit union. While walking to a gas station, located at Grand and Forest Park, Thompson approached Falls from behind, turned to face Falls and demanded her purse. Falls gave Thompson her purse because he had a sharp, wooden-handled object in his hand. Thompson, thereafter, ordered Falls to give him the money that she had in her hand. Falls complied. After the robbery, Falls proceeded to the gas station and called the police.

At approximately 6:00 p.m., that same day, Rose Hadley and Fred Torrez were working at Johnson's Amoco Station on Laclede Avenue. Thompson entered the station and bought some juice. Thompson then asked the prices of different items. He, thereafter, put his hand on Torrez's right shoulder and put a "blade" to his side. Thompson demanded money. Initially, Hadley froze. Hadley then put her hand in her pocket to get the cash register key. Thompson told Hadley to take her hand out of her pocket. Although Hadley did as instructed, Thompson lunged at Hadley with the knife. Luckily, the knife broke before Thompson was able to stab Hadley.

While this was occurring, Torrez ran across the street to a bar, J & A's, and told the bartender to call the police because the

station was being robbed. On his way back into the station, Torrez picked up a tire iron. Before Torrez entered the station, Thompson demanded that Torrez stop at the doorway. Torrez did so. Torrez then looked behind himself and noticed that two J & A patrons, Keith Savage and Jeff Owens, were behind him. Thompson, upon seeing Torrez, Savage and Owens, ran out the door.

Torrez chased Thompson and threw the tire iron at him. Torrez, however, missed. Torrez, Savage and Owens continued to chase Thompson. They ran across an empty lot adjacent to the station, across an alley and into a driveway between two buildings. As Thompson attempted to jump a fence, he tripped and fell. Torrez, Savage and Owens surrounded Thompson.

Owens directed St. Louis City Police Officers James Wurm and Dick Manzo to the location where Torrez and Savage were holding Thompson. Torrez informed the officers that Thompson had attempted to rob the station. With that information, the officers placed Thompson under arrest. The officers, thereafter, conducted a pat down search of Thompson. The search disclosed a brown leather sheath and a leather coin purse containing Falls' identification card and some keys. The officers advised Thompson of his *Miranda* rights. Thompson, thereafter, confessed that he robbed Falls and attempted to rob the Amoco Station.

At trial, Falls identified photographs of a knife as the sharp, wooden-handled object that Thompson displayed. She also identified Thompson as the man who took her purse. Hadley and Torrez similarly identified photographs of the knife Thompson used at the station. Additionally, Hadley, Torrez, Savage and Owens all identified Thompson as the man who attempted to rob the Amoco station. Officer Manzo identified photographs of the blade and handle that Thompson used while robbing the Amoco station. Finally, Officer Manzo identified Thompson as the man he arrested for committing the Amoco robbery.

At the close of evidence, instructions and arguments of counsel, the jury found Thompson guilty of: (1) first degree robbery of Falls; and (2) attempted first degree robbery and armed criminal action of Hadley and Torrez. On June 1, 1990, the trial court sentenced Thompson to terms of: fifteen years for the first degree robbery; ten years for the attempted first degree robbery; and five years for armed criminal action. The court specified that all sentences were to run consecutively. On June 11, 1990, Thompson filed his Notice of Appeal. On December 24, 1990, Thompson filed his *pro se* motion to vacate judgment and sentence pursuant to Rule 29.15. The trial court appointed the public defender's office to represent Thompson on January 4, 1991. After one extension of time, Thompson's counsel filed an amended motion on February 27, 1991. On March 4, 1991, Thompson's counsel filed an addendum to Thompson's amended motion. On April 22, 1991, the trial court issued findings of fact, conclusions of law and order denying Thompson's motion for post-conviction relief, without an evidentiary hearing. On May 22, 1991, Thompson filed his second Notice of Appeal. We have consolidated Thompson's two appeals, pursuant to Rule 29.15(*l*).

 Thompson's first point is that the prosecutor improperly attempted during voir dire to define reasonable doubt and that the trial court erroneously overruled defense counsel's objections to such definition. Initially, we note that trial courts have broad discretion in controlling voir dire examinations. *State v. Acklin*, 737 S.W.2d 743, 747 (Mo.App.1987). Rulings on questions in these areas will only be disturbed on appeal when the record shows a manifest abuse of that discretion. *Id.* Although discussion of reasonable doubt is not encouraged, it will not constitute reversible error so long as counsel does not attempt to substitute his own definition. *Id.*

 Here, the statements that the prosecutor made during voir dire are within the permitted area of discussion. Many of the words the prosecutor used were apparently carefully chosen because they parallel the language of MAI–CR 3d 302.04. It

can scarcely be deemed error for an attorney to repeat to a jury, even segmented as was done here, the language of the approved instructions. *State v. Acklin*, 737 S.W.2d at 747. Moreover, the purpose of voir dire is to determine any bias or prejudice by prospective jurors so that both the accused and the State might secure a fair and impartial panel of jurors. *State v. Herndon*, 670 S.W.2d 32, 37 (Mo.App.1984). The record reveals that the prosecutor's discussion of reasonable doubt disclosed one prospective juror who was not qualified because the prospective juror stated that she would not follow the law in that she would require the prosecutor to remove *all* doubt. For these reasons, we find that: (1) the prosecutor did not improperly attempt to define reasonable doubt during voir dire; and (2) the trial court did not err in overruling defense counsel's objections. Thompson's first point is, therefore, denied.

■ Thompson's second point is that the trial court erred in denying his request for a mistrial during voir dire. Defense counsel made this request after the following exchange occurred:

[PROSECUTOR]: And then the jury has to decide, "Are those people telling the truth, and are they lying, are they mistaken, what are the facts of this case?" Because the facts come to you through the witnesses. And that's the jury's job to do. "Besides I think so and so is lying, I think so and so is mistaken; I think so and so is telling the truth." Whatever, it is up to the jury. Is there anybody that feels that they could not do that, that they can't make a decision about whether or not somebody is truthful? No? Okay. If you hear two sides of the story?

[DEFENSE COUNSEL]: Your Honor, I object at this time and can we approach the bench.

[THE COURT]: I'll sustain the objection.

[DEFENSE COUNSEL]: Well, Your Honor, I'll approach.

(Counsel approached the bench and the following proceedings were had out of the hearing of the Jury:)

[DEFENSE COUNSEL]: Your Honor, I'm concerned about the two sides of the story. I believe that is a comment on my client's right not to testify. And I'm afraid I'm going to ask for a mistrial at this time based on that statement.

[PROSECUTOR]: Judge, this has nothing to do with her client. She has endorsed and [sic] alibi witness and I intend to say that two sides of the story do not amount to reasonable doubt, does anybody have a problem with that?

[THE COURT]: Well, I sustained the objection. I'm going to stick with that. But at this point, I think a mistrial, of course, is always a drastic measure to take. I don't feel that the impact of that or the affect [sic] of that would be at this point prejudicial to the defendant. I think that the remedy of sustaining the objection is sufficient. So I'm going to deny the motion for a mistrial.

[DEFENSE COUNSEL]: Your Honor, [the prosecutor] has stated her full question and I'm going to object to the full question with regards to two sides of a story not equalling reasonable doubt on the grounds that I stated earlier, and also on the fact that it would be defining reasonable doubt. And, therefore, I would have an additional objection to that particular line of questions.

[THE COURT]: The objection is sustained.

■ Granting a mistrial is a drastic remedy. *State v. Leisure*, 810 S.W.2d 560, 571 (Mo.App.1991). It should only be used where there is grievous error which cannot otherwise be remedied. *Id.* The granting of a mistrial rests largely in the discretion of the trial court because the trial court is in a better position to determine any prejudicial effects from the alleged error. *Id.* In order to hold that the failure to grant a mistrial was reversible error, we must conclude, after reviewing the entire record, that as a matter of law, the error was so prejudicial that its effect was not removed by the trial court's action. *Id.*

■ The Fifth Amendment of the United States Constitution and Article I, Section 19, of the Missouri Constitution

give the defendant the right against self-incrimination. Moreover, Section 546.270, RSMo 1986, and Rule 27.05(a) specifically forbid references by the prosecutor to defendant's failure to testify. Both direct and indirect references are forbidden. *State v. Hill,* 678 S.W.2d 848, 850 (Mo.App. 1984). Such a reference is plain error where it deprives a defendant a fair trial. *Id.*

■ Critical to determining whether a direct reference to the failure to testify has been made is whether the words "defendant" or "accused" and "testify" or their equivalents have been used. *Id.* Such language was not used here. We, therefore, find no direct reference.

To be an indirect reference, the comment must be the type that, when viewed in context, would cause the jury to infer that the remark referred to the accused's failure to testify. *Id.* The ultimate question is whether the remark drew the jury's attention to the lack of defendant's testimony. *Id.* We must examine the remark in the particular context in which it was made. *Id.*

■ Initially, we note that when viewing the prosecutor's comments in context, even before she offered an explanation regarding the meaning of her comment, it appears that the prosecutor was attempting to elicit whether or not each prospective juror could decide whether a witness was truthful or not if the prospective juror was faced with conflicting testimony. We, therefore, find it unlikely that this comment would cause the jury to infer that the remark referred to the accused's failure to testify. *Cf. State v. Williams,* 624 S.W.2d 127, 129 (Mo.App.1981) (wherein the appellate court declares that the trial court did not err in asking potential jurors if they "could give both sides a fair trial"). However, because the trial court sustained the objection, the comment is, at most, an indirect reference on Thompson's failure to testify. An indirect reference will only be improper, thereby warranting reversal, if the prosecutor's comments demonstrated calculated intent. *State v. Corpier,* 793 S.W.2d 430, 442 (Mo.App.1990). Not only

do the prosecutor's comments, on their face, fail to demonstrate calculated intent, but her response at the bench directly refutes such intent. Thompson's second point is, therefore, denied.

■ Thompson's third point is the motion court erred in refusing to submit to the jury Instruction A, MAI–CR 3d 323.02, robbery in the second degree, as a lesser included offense of robbery in the first degree as submitted in Count I. Specifically, Thompson contends that because Falls testified that she did not know what the object was in her assailant's hand, this provided a basis for acquitting Thompson of first degree robbery, and instead, convicting him of second degree robbery.

Section 569.020, RSMo 1986, defines first degree robbery as follows:

A person commits the crime of robbery in · the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

Section 569.030, RSMo 1986, defines second degree robbery as follows:

A person commits the crime of robbery in the second degree when he forcibly steals property.

■ An instruction on a lesser included offense is required only if the defendant requests it and there is evidence to support an acquittal of the greater offense and conviction of the lesser offense. *State v. Perkins,* 679 S.W.2d 410, 411 (Mo.App. 1984). The evidence must show lack of an essential element of the greater offense to require instruction on the lesser included offense. Here, Thompson requested a lesser included offense instruction. However, there is no evidence to support an acquittal of first degree robbery. Falls testified that she gave Thompson her purse because

he had a sharp, wooden-handled object in his hand. Moreover, she identified photographs of a knife as the sharp, wooden-handled object Thompson displayed. Although Falls admitted that she did not initially identify the knife as the knife that was used against her, she was sure that it was. Moreover, there was no evidence that Thompson committed the robbery by any other method than the use of a dangerous instrument or deadly weapon. *See State v. Twitty*, 793 S.W.2d 561, 565–566 (Mo.App.1990); *State v. Perkins*, 679 S.W.2d 410, 411 (Mo.App.1984). Thompson's third point is, therefore, denied.

▆▆▆ Thompson's fourth point is that the motion court erred in denying his Rule 29.15 motion, without an evidentiary hearing, because: (1) his request was timely; and (2) it alleges facts, not conclusions, not refuted by the record which warrant a hearing. Appellate review of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). The findings, conclusions and judgment of the motion court are clearly erroneous if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *State v. Fraction*, 782 S.W.2d 764, 769 (Mo.App.1989). A defendant is entitled to an evidentiary hearing only if: (1) his Rule 29.15 motion alleges facts, not conclusions, warranting relief; (2) those facts raise matters unrefuted by the record; and (3) the matters complained of resulted in prejudice to the defendant. *Id.* No evidentiary hearing is necessary if the files and record of the case conclusively show that defendant is not entitled to relief. Rule 29.15(g).

▆▆▆ To establish ineffective assistance of counsel, a defendant must demonstrate that: (1) counsel's performance was unreasonable under prevailing professional norms; and (2) the defendant was thereby prejudiced. *State v. Fraction*, 782 S.W.2d at 769–770. Additionally, a defendant must overcome the presumption afforded defense counsel that, under the circum-

stances, the challenged action might be sound trial strategy. *Id.*

▆▆▆ Thompson first contends that his counsel should have called Edmond Lillard to testify at trial. Thompson claims that he was at Lillard's home at the time of Falls' robbery and Lillard would corroborate this. As a general rule, the decision to call witnesses is a matter of trial strategy and will not support a finding of ineffective assistance of counsel. *State v. Fraction*, 782 S.W.2d 764, 770 (Mo.App.1989). To support a charge of ineffective assistance of counsel for failure to secure testimony of a defense witness, the defendant must show how the testimony of an alleged key witness would have helped him and what that testimony would have been. *Id.* Thompson's contention fails for two reasons. First, after the police arrested Thompson, he admitted both that he robbed Falls and that he attempted to rob the Amoco station. Moreover, the sentencing record refutes Thompson's allegation. Defense counsel stated that although she endorsed Lillard as an alibi witness, when Lillard came to her office, he stated that he could only testify that he had seen Thompson in a limousine on *a* Friday during July. Defense counsel expressed her concern that since there were two Fridays preceding the robbery, Thompson's alibi defense would not work. Based on this testimony, the motion court concluded that defense counsel properly decided not to call Lillard as a matter of trial strategy. Review of the entire record does not leave us with a definite and firm impression that a mistake has been made. Thompson's contention is, therefore, without merit.

▆▆▆ Thompson's second contention is that his trial counsel was ineffective for failing to adequately voir dire a prospective juror who, if questioned, would have testified that she would be more likely to believe police officers' testimony than other witnesses' testimony and would give officers' testimony more credibility than that of other witnesses. Thompson's contention is refuted by the record. This prospective juror plainly stated that her relationships with various police officers would have no

effect on her ability to evaluate witnesses' testimony. Thompson's fourth point is, therefore, denied.

For these reasons, we affirm both the trial court's and motion court's decisions.

PUDLOWSKI, P.J., and CRIST, J., concur.