

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99468 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Robert H. Dierker |
| RAYMON DENZMORE, | ) | |
| | ) | |
| Appellant. | ) | Filed: April 29, 2014 |

## *Introduction*

Raymon Denzmore (Defendant) appeals the judgment of conviction entered after a jury found him guilty of one count of first-degree robbery, one count of armed criminal action, two counts of kidnapping, one count of resisting arrest, and one count of leaving the scene of an accident. Defendant claims the trial court erred in: (1) denying his motion to sever Defendant's trial from that of his codefendant; (2) overruling his motions for judgment of acquittal because the State presented insufficient evidence to support Defendant's conviction of felony leaving the scene of a motor vehicle accident; and (3) imposing a forty-four-year prison sentence. We affirm.

## *Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the following evidence was adduced at trial: On January 15, 2011 at approximately 10:30 p.m., Kristin Hemker and Michelle Beeks were leaving the restaurant where they worked and walking to Ms. Hemker's car, when Ms.

Hemker noticed Defendant and his co-defendant, Alon Monigan, watching them from a dirty, green Ford Taurus in the parking lot. Ms. Hemker reached her car, a 2002 Nissan Altima, and entered the driver's seat. Ms. Beeks placed her bag in the back seat and was sitting down and closing the passenger's door, when Defendant, then seventeen years of age, "jumped" into the seat behind Ms. Hemker, pointed a silver and black gun at her, and ordered, "Just drive, bitch." When Ms. Hemker stopped the car at a stop sign, Defendant pushed the back of her head with his gun and stated, "Drive, bitch."

After about six or seven blocks, Defendant directed Ms. Hemker to park the car outside of an apartment building and ordered Ms. Hemker and Ms. Beeks to "get out and leave our phone[s] and our purse[s] and leave everything. . . . just go and keep walking." When Ms. Hemker exited the car, she noticed Mr. Monigan sitting in the green Taurus she had seen in the restaurant parking lot.

On January 16, 2011, at approximately 8:45 p.m., Alexandra Quigley drove home from work and parked her car in front of her house. She passed through the iron gate in front of her stoop, and when she turned around to close it, Mr. Monigan pulled it open. Ms. Quigley threw her purse at him, but Mr. Monigan continued to approach her, pointed a black and silver gun at her head, and repeatedly ordered, "Get in the car." Two other men were standing on the street near Mr. Monigan's car. Ms. Quigley's husband, Nicholas Quigley, opened the door when he heard an "aggressive," male voice. Ms. Quigley ran inside the house and called the police.

Mr. Quigley rushed out the door and hit Mr. Monigan as he attempted to flee. Mr. Quigley and Mr. Monigan fought, and Mr. Monigan struck Mr. Quigley's face and head several times with his gun. When he realized that the two other men had joined the fight, Mr. Quigley disengaged, and Mr. Monigan and the two other men ran to their car and drove away.

2

On the night of January 21, 2011, Police Officer William Hoffman was patrolling downtown St. Louis when he noticed a gray Altima that matched the description of the vehicle taken from Ms. Hemker on January 15. Defendant was driving the Altima, and Mr. Monigan was riding in the passenger's seat. Officer Hoffman followed the Altima, verified the license plate, and attempted to pull over the vehicle. When Officer Hoffman activated his lights and siren, Defendant began driving "a[t] a very high rate of speed and disregarding the red lights . . . ." Officer Hoffman pursued the Altima for about five blocks on wet, icy roads. Finally, Defendant made a sharp left turn in front of a restaurant, hit a parked car, and propelled it over the curb and through the restaurant's front window, causing "a pretty big explosion." Defendant and Mr. Monigan exited the Altima and fled on foot. Police officers later located Defendant and Mr. Monigan hiding in a nearby parking garage and arrested them.

Police recovered from the Nissan Altima, among other things, a black and silver gun, Ms. Quigley's purse, and the Quigleys' insurance card. Forensic analysts found Defendant's DNA on the Altima's deployed driver's side airbag.

On January 21, 2011, the St. Louis Metropolitan Police Department conducted two live line-ups, one with Defendant and another with Mr. Monigan. Ms. Hemker identified Defendant as "[t]he man that got in [her] car with the gun" and Mr. Monigan as the man driving the green Taurus. Ms. Beeks identified Defendant as the gunman, but she did not identify anyone in Mr. Monigan's line-up. Mr. and Ms. Quigley identified Mr. Monigan as the man who robbed Ms. Quigley on January 16. Neither Mr. Quigley nor Ms. Quigley identified Defendant.

The State charged Defendant and Mr. Monigan, under the same indictment, with: first-degree robbery and armed criminal action relating to Ms. Hemker (Counts I and II) and kidnapping Ms. Hemker and Ms. Beeks (Counts III and IV). Additionally, the State charged

Defendant with resisting arrest (Count XI) and the class D felony of leaving the scene of a motor vehicle accident (Count XII).[1]

Prior to trial, Defendant filed a motion to sever his case from Mr. Monigan's, which the trial court denied. After a five-day trial, the jury found Defendant and Mr. Monigan guilty on all counts. The trial court sentenced Defendant to consecutive terms of twenty years' imprisonment on Counts I and II, to run concurrently with five-year sentences on Counts III and IV and consecutively with two-year sentences on Counts XI and XII, for a total of forty-four years' imprisonment. Defendant appeals.

### *Standard of Review*

The decision to sever a joint trial lies within the sound discretion of the trial court. State v. Isa, 850 S.W.2d 876, 885 (Mo. banc 1993). We will disturb that ruling only if there has been an abuse of discretion resulting in clear prejudice to the defendant. Id.

When a criminal defendant challenges the sufficiency of the evidence to support his conviction, our review is "limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." State v. Burrell, 160 S.W.3d 798, 801 (Mo. banc 2005). We accept as true all the evidence favorable to the State, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences contrary to the verdict. State v. Crawford, 68 S.W.3d 406, 407–08 (Mo. banc 2002).

---

[1] In addition, the State charged Mr. Monigan with the following charges: first-degree robbery and armed criminal action relating to Ms. Quigley (Counts V and VI); attempted kidnapping of Ms. Quigley (Count VII); second-degree assault and armed criminal action relating to Mr. Quigley (Counts VIII and IX); and resisting arrest (Count X).

4

Defendant concedes that he did not preserve for appeal his challenge to the constitutionality of his sentence and requests plain error review. Pursuant to Rule 30.20, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.

### *Discussion*

#### A. *Motion to Sever*

In his first point on appeal, Defendant claims the trial court clearly erred in denying his motion to sever his trial from that of Mr. Monigan. More specifically, Defendant asserts that, as a result of the trial court's refusal to sever, "there was prejudicial evidence admitted at the joint trial that would have been inadmissible against [Defendant] in a separate trial, namely five counts of offenses with which the State had charged Mr. Monigan only and in which [Defendant] had not participated." The State counters that severance was not required and Defendant failed to establish that he was prejudiced.

Missouri courts generally favor joint trials because they "further the interests of justice by avoiding inconsistent verdicts and lead to more accurate assessments of relative culpability." State v. Farr, 69 S.W.3d 517, 525 (Mo.App.S.D. 2001); see also Isa, 850 S.W.2d at 885. Under Rule 24.06 and Section 545.880, which govern the propriety and procedure of severing joint trials, severance is required, upon the defendant's written motion, if the trial court finds the probability for prejudice exists or a separate trial is necessary to achieve a fair determination of defendant's guilt or innocence. Rule 24.06(b); Mo. Rev. Stat. § 545.880.2; see also State v. Kidd, 990 S.W.2d 175, 182 (Mo.App.W.D. 1999).

The purpose of severance "is to protect defendants in joint trials from being convicted on evidence that would be inadmissible against them in a separate trial." State v. Ward, 782 S.W.2d

5

725, 729 (Mo.App.E.D. 1989). "Severance is required when the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to the separate defendants." State v. Oliver, 791 S.W.2d 782, 786 (Mo.App.E.D. 1990). Severance is not required when a less drastic course, such as the provision of proper jury instructions, will prevent prejudice to the defendant. Isa, 850 S.W.2d at 885; Kidd, 990 S.W.2d at 182. On appeal, the defendant bears the burden of affirmatively showing that the joint trial prejudiced his right to a fair trial. Kidd, 990 S.W.2d at 182.

In the instant case, the prosecutor explained to the venire panel that Defendant and Mr. Monigan faced separate charges. The prosecutor stated that Mr. Monigan "[was] charged with incidents that are alleged to have occurred on three separate dates" – January 15, January 16, and January 20, 2011 – while Defendant was charged with the incidents that occurred on January 15 and 20, 2011. The State's evidence relating to the January 16, 2011 offenses against the Quigleys incriminated only Mr. Monigan. Ms. Quigley testified that Mr. Monigan was the man who pointed a gun at her head, took her purse, and ordered her into his car. Likewise, Mr. Quigley testified that Mr. Monigan was the man who threatened Ms. Quigley and struck him with a gun. The State presented evidence that Mr. and Ms. Quigley separately identified Mr. Monigan in live line-ups on January 21, 2011 and that neither identified Defendant as being present during the incident. Finally, in closing argument, the prosecutor emphasized that the charges relating to the January 16, 2011 offenses against the Quigleys "all refer to Alon Monigan. Mr. Monigan was the one who was identified by Alexandra Quigley. He was the one who was identified by Nicholas Quigley . . . ."

Based on our review of the record, we conclude that the evidence was "not so complex that a juror [could not] keep separate its admissibility against" Mr. Monigan alone. See, e.g., Isa,

850 S.W.2d at 885. Furthermore, the evidence the State presented relating to Mr. Monigan's actions on January 16, 2011 neither directly nor inferentially implicated Defendant in those crimes. See, e.g., id. As previously noted, the purpose of severance is to "protect defendants in joint trials from being convicted on evidence that would be inadmissible against them in a separate trial." Ward, 782 S.W.2d at 729. "The evidence which poses the greatest danger in this regard is evidence that is material to the moving defendant." Id. Missouri law does not require severance when evidence material to any defendant was admissible against fewer than all defendants. Id.

We further find that Defendant failed to show prejudice resulting from his joint trial with Mr. Monigan and the consequent admission of evidence relating to Mr. Monigan's January 16, 2011 crimes against the Quigleys. Defendant contends that the evidence of these "uncharged crimes" prejudiced his case because "jurors likely concluded, on the premise that 'birds of a feather flock together,' that [Defendant] was, more likely than not, guilty of the offenses for which he was on trial . . . ." However, the trial court instructed the jury that the evidence relating to Mr. Monigan's January 16, 2011 crimes could not be considered in the case against Defendant.[2] Juries are presumed to follow instructions, and this instruction was adequate to cure any potential prejudice. See Isa, 850 S.W.2d at 886; Kidd, 990 S.W.2d at 185. Point denied.

---

[2] Jury Instruction No. 25 provided:

> The evidence regarding Counts VI thru IX introduced against Alon Monigan for the charges of Robbery 1st Degree, Armed Criminal Action, Attempted Kidnapping; Assault 2nd degree and Armed Criminal Action for incidents which are charged to have occurred on January 16, 2011 at 1715 Hickory in the [C]ity of St. Louis, State of Missouri, may be considered by you only on the case against Alon Monigan and not on [sic] the case against [Defendant].

7

*B. Sufficiency of the Evidence*

In his second point on appeal, Defendant claims the trial court erred in overruling his motions for judgment of acquittal at the close of the State's evidence and at the close of all evidence because there was insufficient evidence to support his conviction for the class D felony of leaving the scene of a motor vehicle accident (Count XII). More specifically, Defendant asserts that the State failed to prove beyond a reasonable doubt that the accident resulted in property damage in excess of $1,000. In response, the State contends that Defendant "waived appellate review of this claim by making a judicial admission at trial that he was guilty of this offense."

Pursuant to Section 577.060.1, a person commits the crime of leaving the scene of a motor vehicle accident when:

> being the operator or driver of a vehicle on the highway or on any publicly or privately owned parking lot or parking facility generally open for use by the public and knowing that an injury has been caused to a person or damage has been caused to property, due to his culpability or to accident, he leaves the place of the injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and driver's license number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer.

Mo. Rev. Stat. § 577.060.1. "Leaving the scene of a motor vehicle accident is a class A misdemeanor, except that it shall be a class D felony if the accident resulted in . . . [p]roperty damage in excess of one thousand dollars . . . ." Mo. Rev. Stat. § 577.060.3(2). Property damage in excess of $1,000 is an element of the offense, and the State bears the burden of establishing that element. State v. Watkins, 804 S.W.2d 859, 860 (Mo.App.E.D. 1991).

In Count XII of the substitute information in lieu of indictment, the State charged Defendant with the "class D felony of leaving the scene of a motor vehicle accident." The

substitute information provides that: "the defendant, while operating a motor vehicle . . . was a party to an accident that caused other persons to sustain property damage in excess of one thousand dollars, and the defendant knew that such damage had occurred, and defendant left the scene of the accident . . . ."

During voir dire, defense counsel informed the venire panel:

> [Defendant] and I are denying his involvement in Counts I through IV. We are denying his involvement with respect to the robbery, armed criminal action and kidnapping charges; however, we are not denying his involvement in the resisting arrest and leaving the scene of an accident charges.

In his opening statement, defense counsel again declared:

> [M]y client is guilty of two of the counts he's charged with. He's guilty of Counts XI and XII, resisting arrest and leaving the scene of an accident. He was in a stolen car five days after the fact. He fled from police in that car, he crashed that car, and after doing that he was quickly apprehended by police.

At trial, the State presented evidence that: On January 20, 2011, Defendant was driving Ms. Hemker's stolen Nissan Altima in downtown St. Louis. When Officer Hoffman attempted to stop Defendant, he began speeding and disregarding red lights. Defendant made a sharp left turn on icy roads, hitting a parked car and propelling the parked car through the window of a restaurant. Defendant and Mr. Monigan fled on foot. Ms. Hemker testified that, after the accident, her car was "totaled." Officer Hoffman stated that, after the crash, there was a "pretty big explosion" and the car caught fire. The prosecutor did not present evidence of the total cost of the property damage that resulted from the accident.

After the close of the State's evidence, defense counsel moved for a judgment of acquittal on Count XII because "the element to [sic] value is not established and if anything goes to the jury it should be on the misdemeanor." The prosecutor responded, "I believe the jury could determine a reasonable inference from the damage to the two totaled cars and the building on fire

9

in excess of $1,000, but there was no direct evidence so I understand the Court's –" Defense counsel interrupted the prosecutor, asserting, "I think we need direct evidence." The trial court held, "I'm dubious about the State's position, but I will deny the motion at this time."

Defense counsel renewed his motion for a judgment of acquittal on Count XII at the close of all evidence, stating: "I don't think that the State established value to the extent necessary to justify submitting that count to the jury." The trial court "reserved ruling on the motions for judgment of acquittal as to Count XII" and stated, "I will submit the lesser offense. We'll see what the jury makes of it."

In closing argument, defense counsel challenged the integrity of the live line-ups and Ms. Hemker's and Ms. Beek's identifications of Defendant. Defense counsel conceded that Defendant "is associated with the January 20th incident. I'm not going to deny that. . . . But other people are associated with the incidents that preceded his presence in that car." Defense counsel asked the jury to "hold [Defendant] accountable for his actions as to Counts XI and XII" and acquit Defendant on Counts I through IV.

The trial court submitted jury instructions on the felony and misdemeanor offenses of leaving the scene of a motor vehicle accident. The jury found Defendant guilty of the class D felony of leaving the scene of a motor vehicle accident, an essential element of which is property damage in excess of $1,000. Mo. Rev. Stat. § 577.060.3(2).

As an initial matter, we address the State's contention that Defendant waived appellate review of his claim because he "repeatedly admitted before the jury that he was guilty of Count XII." "The general rule is that when a defendant makes a voluntary judicial admission of fact before the jury, it serves as a substitute for evidence and dispenses with proof of the actual fact. The admission is conclusive on him for the purpose of the case." State v. Eacret, 456 S.W.2d

10

324, 327 (Mo. 1970) (quotation omitted). "[A]n admission made by an attorney in open court during trial which is against the interests of his clients is presumed to be true and courts are warranted in acting thereon." State v. Vandiver, 592 S.W.2d 304, 306 (Mo.App.E.D. 1979) (citing State v. Levy, 170 S.W. 1114, 1117 (Mo. 1914)); see also CJS Evidence § 599 (2008) ("A clear admission of a material fact by counsel in opening statements or in closing arguments is binding upon the client.").

In Count XII of the substitute information in lieu of indictment, the State charged Defendant with the class D felony of leaving the scene of an accident. In his opening statement, defense counsel announced: "[Defendant]'s guilty of Counts XI and XII, resisting arrest and leaving the scene of an accident." Moreover, after the trial court denied Defendant's motions for judgment of acquittal as to Count XII, trial counsel asked the jury to "hold [Defendant] accountable for his actions" as to Count XII. By admitting that he was guilty of the crime charged – felony leaving the scene of an accident – Defendant waived or dispensed with the production of evidence relating to that charge. See, e.g., McMullin v. State, 686 S.W.2d 549, 551 (Mo.App.E.D. 1985) Defendant's admissions were sufficient to meet the State's burden of proof as to each element comprising the felony charged. See, e.g., State v. Johnson, 837 S.W.2d 39, 41 (Mo.App.W.D. 1992).

In his reply brief, Defendant contends that defense counsel only admitted that Defendant left the scene of an accident but "did not unequivocally admit that the property damage, which resulted from [Defendant's] commission of that offense, exceeded $1,000." As previously noted, the State charged Defendant in Count XII with felony leaving the scene of an accident and "caus[ing] other persons to sustain property damage in excess of one thousand dollars . . ." Defense counsel admitted that Defendant was guilty of Count XII. Point denied.

11

*C. Cruel and Unusual Punishment*

In his final point on appeal, Defendant claims the trial court plainly erred in imposing a forty-four-year sentence for non-homicide offenses that Defendant committed when he was seventeen years of age. Defendant asserts that the forty-four-year sentence "constituted a *de facto* life sentence and violated the principle of proportionality and [Defendant's] constitutional rights to due process of law and protection against cruel and unusual punishment . . . ." The State counters that Defendant's combined sentence for multiple offenses does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.

"[T]he Eighth Amendment guarantees individuals the right not to be subjected to excessive sanctions." Roper v. Simmons, 543 U.S. 551, 560 (2005). "Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense." Graham v. Florida, 560 U.S. 48, 59 (2010) (internal quotation omitted). Proportionality "does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." Id. at 60 (quotation omitted). "Gross disproportionality will be found only in 'exceedingly rare' and 'extreme' cases." Burnett v. State, 311 S.W.3d 810, 814 (Mo.App.E.D. 2009) (quoting Lockyer v. Andrade, 538 U.S. 63, 73 (2003)). "A sentence within the range prescribed by statute generally will not be found excessive, or grossly disproportionate, to the crime committed." Id. at 815.

"[C]hildren are constitutionally different from adults for purposes of sentencing." Miller v. Alabama, 132 S.Ct. 2455, 2464 (2012). "The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." Graham, 560 U.S. at 82. The Constitution also prohibits mandatory penalty schemes that prevent the

12

sentencer from taking into account the defendant's youth.  Miller, 132 S.Ct. at 2466.  However, "[a] State need not guarantee the offender eventual release . . . ."  Graham, 560 U.S. at 82.

After the penalty phase of Defendant's trial, the jury assessed the following punishment for Defendant:  twenty years' imprisonment for first-degree robbery and armed criminal action (Counts I and II); five years' imprisonment for both kidnapping counts (Counts III and IV); and two years' imprisonment for resisting arrest and leaving the scene of a motor vehicle accident (Counts XI and XII).  Defendant filed a sentencing memorandum citing the United States Supreme Court's decisions in Miller and Graham and urging the trial court to consider Defendant's youth and "recognize that his age should have a substantial mitigating impact on the sentence he receives."

At the sentencing hearing, defense counsel argued that, pursuant to Miller and "that whole line of cases," the trial court must consider Defendant's youth "a substantial mitigating factor, even when it comes to serious crimes."  The trial court acknowledged that defense counsel was "quite right to raise the issue."  However, the trial court held:

> I think that the Miller analysis at this point . . . needs to be confined to its context and I think that, you know, my crystal ball is not very clear on what the evolving standard of decency dictates in [Defendant's] case.
>     I think the Miller analysis completely ignores the morale [sic] dimension of evil conduct, so the Court is not disposed to exten[d] the rationale of Miller in this context.  The Court also notes that the Court's view [sic], we did have a sentencing phase.  The jury was acquainted with more information about [Defendant] and the jury assessed punishment accordingly.  So I think the jury did take into account all of the factors that you think should be taken into account . . . .

The trial court sentenced Defendant to consecutive terms of imprisonment of twenty years for first-degree robbery, twenty years for armed criminal action, two years for resisting arrest, and two years for leaving the scene of a motor vehicle accident, to run concurrently with two five-year sentences for kidnapping, for a total sentence of forty-four years' imprisonment.

The record establishes that the trial court properly considered Defendant's age and the severity of his crimes when determining his sentence. See, e.g., Burnett, 311 S.W.3d at 814. The trial court reviewed Defendant's sentencing memorandum and considered defense counsel's argument that "the notion of incorrigibility is inconsistent with youth" and Defendant "certainly could steer his life around." The trial court found that the evidence of Defendant's age, support system, and prospects for rehabilitation was presented to the jury, and the jury-assessed punishment was not disproportionate to the severity of the offenses Defendant committed. Additionally, we note that Defendant's sentence neither exceeded the statutory range of punishment nor constituted the maximum punishment allowed by statute. See, e.g., id. at 815.

Defendant maintains that, because the forty-four-year sentence exceeds his life expectancy, it constitutes a *de facto* life sentence and violates the Eighth Amendment prohibition on cruel and unusual punishment. However, the United States Supreme Court held that "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime." Graham, 560 U.S. at 75. "[W]hile the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life." Id. Here, the trial court sentenced Defendant to a term-of-years sentence not life without parole. Based on our review of the record, we conclude that the trial court did not plainly err in sentencing Defendant, in accordance with the jury's verdict and assessment of punishment, to forty-four years' imprisonment. Point denied.

### *Conclusion*

The judgment of the trial court is affirmed.

_____
Patricia L. Cohen, Judge

Lisa S. Van Amburg, P.J., and
Philip M. Hess, J., concur.