

# Missouri Court of Appeals

## Southern District

## Division One

STATE OF MISSOURI,                    )
                                      )
        Respondent,                   )
                                      )
    vs.                               )        No. SD35763
                                      )        Filed:  March 4, 2020
DOUGLAS DWAYNE EUBANKS,               )
                                      )
        Appellant.                    )

### APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable John D. Beger, Judge

**<u>AFFIRMED</u>**

Douglas Dwayne Eubanks ("Eubanks") appeals his conviction of the class A felony of

assault in the first degree.  In five points on appeal, Eubanks argues that the trial court erred in

rejecting his proffered jury instructions in that the evidence was sufficient to inject the issue of

defense of property.  Finding no merit to Eubanks' five points, we deny the same and affirm the

judgment of the trial court.

**Facts and Procedural Background**

"In determining whether the refusal to submit a jury instruction was error, the evidence is viewed in the light most favorable to the defendant."[1] *State v. Hashman*, 197 S.W.3d 119, 127 (Mo.App. W.D. 2006). We set out other information as necessary for context.

On the evening of March 2, 2018, Eubanks and his friend Burns were sitting around a campfire on Eubanks' property. It was dark, though "the moon was out, . . . and the stars[.]" Eubanks observed Victim (a 67-year-old man) walking on the outer road that ran between Eubanks' property and the interstate. (Eubanks did not own the outer road). Eubanks was unable to discern what clothing the man was wearing from where he was seated—he "didn't know who it was or why he was out there." Eubanks testified that he did "see a lot of foot traffic" on the interstate, "drifters and people like that," but "not generally at night."

Eubanks approached Victim as he was walking, demanding to know who Victim was and what he was doing there. Victim said, "I don't have to tell you fucking shit. Go away." Eubanks replied, "[W]hy are you walking out here at 9:30 at night wearing camo?" Victim stated, "I don't have to tell you shit." Eubanks testified that Victim repeated this statement several times, "and he speeded up his walk." Eubanks told Victim that "I had my grandma and my wife there and my daughter. And if he was gonna -- if he was gonna keep walking, that I planned to walk hi[m] all the way up to J Highway." Eubanks continued a conversation with Victim while Victim

---

[1] The record reflects numerous contradictions in Eubanks' statements regarding the events underlying his conviction (three inconsistent statements to police, and internally inconsistent statements at trial). Frankly, this presents a significant challenge in arriving at *one* version of the evidence which may be said to reflect the light *most* favorable to Eubanks' asserted defense. Several versions exist (that is, to the extent independent classification is applicable), each with strengths and weaknesses. Based on Eubanks' brief, we discern that Eubanks' counsel was already compelled to cross the same bridge. We are well disposed toward counsel's approach under such circumstances (*i.e.*, to present the contradictions along with the consistencies, in an effort to demonstrate whether defense of property was injected from any combination of such evidence). We adopt a similar approach in our recitation of the evidence—for narrative comprehensibility, we attempt to follow the basic timeline to which Eubanks testified at trial.

"continued to walk," pursuing Victim in this manner "quite a ways" from Eubanks' property. Burns followed behind Eubanks.

Eubanks testified that Victim was "dressed like some guy who would have a tent stashed somewhere," "[l]ike a drifter, someone off the interstate, a hobo" and Eubanks had "experience or problems with those in or around [his] property prior to [that] evening[.]"[2] Eubanks "wasn't aware of . . . what [Victim] was doing or what his intentions were, so I made contact with him to figure it out. He was very evasive in his questions and very, you know, disheveled." Eubanks made it "very clear, that I did not want [Victim] to return if he wasn't gonna tell me who he was or why he was outside wearing the attire he was wearing, that I did not want him -- that he was not welcome."

Eubanks and Burns returned to the campfire on Eubanks' property. At trial, Eubanks explained that he did not believe Victim when he had (truthfully) identified himself in their initial encounter "cuz [sic] when I was walking back, there's a big sign that says [Victim's name]." Eubanks deduced, on his *return* from having initially walked Victim away from Eubanks' property, that Victim saw the sign on his walk, decided to use the name on the sign as a local *alias*, and then falsely presented it as his own to Eubanks and Burns.

Burns then observed to Eubanks, "[T]here he is again." Eubanks expressed confusion, but then saw that Burns "got up and started walking towards [Victim] at a quick pace so I followed behind him." Burns demanded of Victim, "What the fuck?" Eubanks quickly followed up the inquiry with "what the hell are you doing in my yard?" Victim stepped approximately "three or four feet" forward onto the grass of Eubanks' property, toward Burns and Eubanks "right past my mailbox[,] walking right there on the shoulder of . . . the outer road." Victim "had come to a

---

[2] Burns had been living in a tent on Eubanks' property for at least a month.

complete stop." Eubanks did not think it was unusual for someone to stop walking when people initiate conversation with that person.

No response from Victim was obtained (or apparently sought) as "there was not time to do anything[]" before Burns "struck [Victim] in the face[.]" Victim "swung back on . . . Burns, hit him once, and then he drew back to do it again.[3] And that's when -- when he was gonna swing, that's when I stepped up and . . . blocked his arm and then that's when I hit him for the first time." Eubanks punched and kicked Victim, and "took [Victim] down to the ground [before Eubanks] stopped [him]self." Eubanks "didn't want [Victim] on the public road," did not want Victim "outside [his] residence," did not like that Victim failed to properly identify himself (although Eubanks also testified that Victim had correctly identified himself and that Eubanks did not believe Victim), that Victim "return[ing] scared me" because Eubanks did not like how Victim was dressed and it was night. Eubanks' testimony was that these interests were sufficient (and were what motivated him) to then "beat the fuck out of [Victim.]"

Eubanks began hitting Victim while he was "three or four feet" onto Eubanks' property; when Eubanks struck Victim "he went backwards[,]" and Victim travelled "from three to four feet on [Eubanks'] property to at least the middle of the road" (*i.e.*, approximately "25 feet").[4] There was no blood on Eubanks' property. Later, Eubanks would "tr[y] showing the officer where the blood would be, and he didn't find any[.]" "But there were pools of blood in the middle of the road[,]" and there was no blood anywhere else.

---

[3] We observe that Eubanks had not alleged that Victim tried to hit Burns in any of his three police interviews, and made this assertion for the first time at trial.

[4] This would perhaps not amount to a reasonable inference were our recitation in this particular instance based on circumstantial evidence, and we will not "grant unreasonable, speculative, or forced inferences." ***State v. Greer***, 588 S.W.3d 623, 627 (Mo.App. E.D. 2019). However, we observe that this was direct evidence from Eubanks' testimony during his case-in-chief, and we therefore recite it as presented to the jury.

Eubanks' wife walked out of the house and Eubanks asked if she knew Victim. Wife activated the flashlight on her cell phone, pointed it at Victim, and identified Victim by name.

Eubanks "helped [Victim] up and asked him if he was missing anything, which he was also wearing a hat that night which was also camouflage. And I helped him find that . . . and handed it back to him." Eubanks "walked [Victim in] the other direction down the road[,] . . . far enough away that he wasn't a threat." Eubanks then walked home.

Eubanks did not flee in anticipation that law enforcement might arrive. He did not hide evidence by changing his clothes "[b]ecause I figured that . . . if something was gonna come of this and I did change my clothes, that I would look incredibly guilty." Eubanks testified that by the time police arrived, he and Burns had "already concocted [a] story about [Victim] looking through the [bathroom] window," and that was the instigating factor in their assault of Victim. As Eubanks further testified, "that was a lie[.]" Eubanks and Burns were both arrested at the scene.

Victim suffered severe injuries. His "face was shattered"; his "sinuses were . . . both broke"; his nose was broken; his "upper plate was broke loose"; there was a "fracture in [Victim's] skull right below [his] temple"; there was swelling "where they kicked [Victim] in the neck"; he had bruised ribs; Victim suffered long-lasting numbness and "tingling" on the left side of his face; and his "lips were totally mangled. They just looked like hamburger."

While Eubanks was in jail, he talked to other inmates and they informed him that he might be facing ten to thirty years in prison. Eubanks was "scared and decided to lie to the police[.]"

On July 21, 2018, Eubanks was charged by "Information in Lieu of Indictment[,]" as a prior offender, with the class A felony of "Assault 1st Degree Or Attempt – Serious Physical Injury or Special Victim," pursuant to section 565.050.[5]

---

[5] All references to statutes are to RSMo Cum.Supp. 2017, unless otherwise indicated.

A jury trial commenced on August 1, 2018. Victim testified to the events on the evening of March 2, 2018. Victim stated he was walking on Clementine road near his sister's property in Phelps County. Victim had parked his vehicle at his sister's house before heading out for his walk. As Victim was walking down the road, he noticed Eubanks sitting next to a fire in his front yard with another man. Eubanks approached Victim and asked him who he was and what he was doing. Victim told Eubanks his name and that he was "walking from [his] sister's." Victim told Eubanks that he walked every night for his health and identified himself as a member of the family who owned property next to Eubanks. Eubanks then said, "What would you say if I don't believe you?" Victim told Eubanks that he did not care if Eubanks believed him or not. Eubanks responded that he thought Victim was lying and that the road was his and he liked "to keep an eye on what goes up and down it." Victim replied that it was a State road and told Eubanks to leave him alone. Eubanks then put up his fists and said, "Let's get it on." Victim said "[n]o, I'll just call the Sheriff" and got out his cell phone. Once Victim got out his cell phone, Eubanks stopped and Victim continued to walk down the road.

Victim stated that as he turned around to go back to his sister's house, he was concerned about another confrontation with Eubanks and was careful to stay on the "opposite edge of the road from Mr. Eubanks' house[.]" He also extinguished the light he was carrying. As he passed Eubanks' house, both men came "running out . . . [a]nd Eubanks basically blocked [his] path." Eubanks kicked him several times in the face and once in the chest. He could tell who was kicking him by their footwear. Eubanks was wearing sandals and Burns was wearing boots. After the assault, Victim ended up in the ditch on the far side of the road.

Deputy Alexander Maurer testified that in his initial interview with Eubanks on the evening of the assault, Eubanks smelled of intoxicants and Eubanks admitted he had been drinking.

Eubanks told Deputy Maurer that Victim had been looking in his bathroom window and he went outside to confront Victim. Victim was walking away from the house and when Eubanks tried to speak to Victim, he struck Eubanks in the face. Deputy Maurer stated that in Eubanks' recorded interview the next day, Eubanks retracted that statement and admitted to kicking Victim, but alleged the fight started in his driveway and ended up across the road. Deputy Maurer stated that he observed Eubanks' left sock to be "covered" in blood, and blood splatter was found on Eubanks' right sock and lower legs of his jeans. Deputy Maurer testified that when he investigated the scene, he found no blood on Eubanks' property.

Eubanks testified he lied to the police during his interview because he was scared when he learned the Victim's age and that he was facing a class A felony charge of assault. On the evening of March 2, 2018, Eubanks and Burns were sitting around a campfire and they noticed Victim walking in the dark on the road. Eubanks did not know who Victim was and confronted him in the road. Eubanks said he asked Victim who he was and Victim told him "I don't have to tell you fucking shit. Go away." Eubanks then asked him, "Why are you walking out here at 9:30 at night wearing camo?" Victim repeated several times that he did not have to tell Eubanks what he was doing and speeded up his walk. Eubanks stated that he kept pace with Victim and made it clear to Victim not to return if Victim was not going to tell him who he was or why he was outside wearing the attire he was wearing.

Eubanks testified that five to ten minutes later, he and Burns saw Victim walking back and Victim was on Eubanks' property "just a few feet." Eubanks clarified that Victim was "walking right there on the shoulder of . . . the outer road." Eubanks said, "[W]hat the hell are you doing in my yard?" and Burns hit Victim in the face. Victim hit Burns back and Eubanks tackled Victim,

7

who had advanced approximately three steps onto Eubanks' property. Eubanks testified that he stopped attacking Victim when his wife identified Victim.

Eubanks admitted that he had been drinking on the evening of March 2 and told Deputy Maurer he thought he was intoxicated. Eubanks also admitted he did not own the outer road, and people walking on the road did not have to identify themselves to him. Eubanks stated he lied about seeing someone looking in his bathroom window, and that he and Burns concocted this story. Eubanks also stated that he hit Victim hard enough to knock him from three to four feet inside his property to the middle of the road.

After the close of all the evidence, Eubanks offered several instructions on defense of property[6], which the trial court "declined to give[.]" The trial court stated that

> under Section 563.041, the user of force has to reasonably believe that the victim is committing or attempting to commit stealing, property damage or tampering in any degree. . . . I did not find that there was any evidence or any evidence from which a jury could reasonably find that the Defendant reasonably believed the victim in this case was doing that.

The jury was instructed on assault in the first, second, third, and fourth degree. The jury found Eubanks guilty of first-degree assault of a special victim.[7] The trial court sentenced Eubanks, as a prior and persistent offender, to twenty years in prison.

Eubanks filed a "Motion for New Trial" on August 27, 2018. After hearing argument, the trial court overruled Eubanks' motion. This appeal followed.

---

[6] Instruction A was a modified verdict director for first-degree assault with a reference to the defense of property instruction. Instruction B was a modified verdict director for second-degree assault. Instruction C was for third-degree assault. Instruction D was for fourth-degree assault. Instruction E was an instruction on defense of property and Instruction F was an instruction which defined "Tamper, Tampered, or Tampering" as "To interfere with something improperly, to meddle with it, displace it, make unwarranted alterations in its existing condition, or to deprive, temporarily, the owner or possessor of that thing."

[7] Section 565.002(14)(d) defines a "special victim" as an "elderly person[.]"

8

In five points on appeal, Eubanks asserts the trial court erred in rejecting his proffered jury Instructions E and F (Point I), Instruction A (Point II), Instruction B (Point III), Instruction C (Point IV), and Instruction D (Point V), in that there was sufficient evidence to inject the issue of defense of property.

## Standard of Review

> A defendant is entitled to an instruction on any theory that the evidence and the reasonable inferences drawn therefrom establish. The trial court errs in failing to submit an instruction on justification when there is substantial evidence to support the defense of justification. The evidence and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the defendant.

*State v. Goodine*, 196 S.W.3d 607, 613 (Mo.App. S.D. 2006). "The burden of injecting the issue of justification in defense of . . . property is upon the defendant." *City of Cape Girardeau v. Joyce*, 884 S.W.2d 33, 34 (Mo.App. S.D. 1994). "[I]nstructions must be based on substantial evidence and the reasonable inferences therefrom, and courts cannot supply missing evidence or grant unreasonable, speculative, or forced inferences." *State v. Greer*, 588 S.W.3d 623, 627 (Mo.App. E.D. 2019).

## Analysis

In five points, Eubanks argues that the trial court erred in rejecting his proffered jury Instructions E and F (Point I), Instruction A (Point II), Instruction B (Point III), Instruction C (Point IV), and Instruction D (Point V). All of these points relate to the same fundamental challenge: that there was sufficient evidence to inject the issue of defense of property (*i.e.*, evidence from which the jury could infer Eubanks used reasonably necessary force to prevent what he reasonably believed to be Victim's attempt to tamper with his property) and that the trial court erred in rejecting Eubanks' proffered jury instructions as to this issue. As such, we combine Eubanks' Points I though V for ease of analysis.

Eubanks had "the burden of injecting the issue of justification[.]" § 563.041.4; *see State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018). "In other words, such an issue must be based on evidence before a trier of fact may even consider it." *City of Raymore v. O'Malley*, 527 S.W.3d 857, 862 (Mo.App. W.D. 2017).

In attempting to meet that burden, Eubanks directs us to section 563.041.1, setting forth the requirements for "defense of property": "A person may . . . use physical force upon another person when and ***to the extent that he or she <u>reasonably</u> believes it necessary*** to prevent what he or she ***<u>reasonably</u> believes to be the commission or attempted commission*** by such person of stealing, property damage or ***tampering*** in any degree." (Emphasis added). Eubanks further attempts to rely on section 569.090.1(1), designating that tampering in the second degree may be demonstrated where a person: "[t]ampers with property of another for the purpose of causing substantial inconvenience to that person or to another." Defense of property "does ***not*** extend to acts punishing the intruder for his or her entry." *Hashman*, 197 S.W.3d at 127-28 (emphasis added).

> As the Comment to section 569.130[8] indicates:
>
> Under § 569.090, subsection 1(1), such tampering must be combined with a purpose to cause substantial inconvenience. Thus, borrowing a neighbor's lawn mower for an hour with no purpose to cause inconvenience would not be an offense under this section, but hiding the same mower for several days might support an inference of a purpose to cause substantial inconvenience. 'Substantial' has not been defined, nor could it be in any manner that would be useful.
>
> . . . .

---

[8] *See **State v. Ecford**, 239 S.W.3d 125, 128 (Mo.App. E.D. 2007) ("We note that as a general rule, comments accompanying a uniform code when adopted have great weight in construing the code."). See Comment to section 563.041:

> Much of the comment on § 563.036 applies to this section also. The scope of this section is limited to the use of physical force by a person to prevent stealing, property damage or tampering. Under subsection 1 he may use such force (but not deadly force) as he reasonably believes necessary to prevent a person from stealing his bicycle, or from damaging his automobile with an axe.

Section 569.130 applies to tampering, damaging, etc. property of another under §§ 569.080 through 569.120, and provides that no crime is committed if the defendant acted under a claim of right for which there is a reasonable basis.

In his brief, Eubanks attempts to rely on our Supreme Court's recent opinions in ***State v. Jackson***, 433 S.W.3d 390 (Mo. banc 2014) and ***State v. Barnett***, 577 S.W.3d 124 (Mo. banc 2019).

Eubanks directs us to the following language in ***Jackson***:

No matter how strong, airtight, inescapable, or even absolutely certain the evidence and inferences in support of the differential element may seem to judges and lawyers, no evidence ***ever*** proves an element of a criminal case until all 12 jurors believe it, and no inference is ***ever*** is drawn in a criminal case until all 12 jurors draw it. . . .

The temptation to violate this principle and refuse to instruct down—though plainly wrong—can be almost overpowering in some cases, especially when the evidence is so strong and the inferences are so obvious that giving a lesser included offense instruction seems almost to beg for jury nullification or compromise verdicts. <u>A sure sign that a judge or court is about to yield to this temptation is a reference to what a 'reasonable juror' in a criminal case must or must not find.</u>[9]

433 S.W.3d at 399–400 (bolding in original, underscore added).

Eubanks also directs us to the following excerpt in ***Barnett***:

*The rule that a court is required to submit an instruction when there is substantial evidence to support it does not change when the defendant's testimony contradicts the requested instruction.* If the opposite were true, the court – not the jury – would be tasked with determining which version of the defendant's statements to believe. This, of course, would be a usurpation of the jury's fact-finding role. As a result, ***<u>when the evidence supports two conflicting versions of events</u>***, even when both versions have been provided by the defendant, the court must refrain from determining which version is correct.

577 S.W.3d at 126–27 (emphasis added).

---

[9] Eubanks relies heavily on the underlined portion of the ***Jackson*** excerpt, and attempts to profit thereby in directing us to a narrow portion of the trial court's oral discussion and ruling in rejecting Eubanks' request for jury instructions on defense of property—*i.e.*, "And under those circumstances, **I do not think it reasonable that a jury could find** that [Victim] would have been in any way tampering with the Defendant's property. And so the defense-of-property instruction is refused." (Emphasis in original). We understand the ***Jackson*** language to have been directed at providing a comprehensible aid to the trial court's internal decision-making process, and ***not*** a stand-alone basis for reversal. In this instance, at least, the trial court recited the verbiage indicated without succumbing to the prohibited temptation.

11

The gist of Eubanks' argument in this vein is as follows:

[T]he substantial evidence supports two wildly different narratives: one supporting the giving of Mr. Eubanks' requested defense-of-property instruction and one contradicting it. Yet notwithstanding that these two conflicting versions of events came from Mr. Eubanks himself, the trial court still could not disregard Mr. Eubanks' first story of seeing [Victim] outside his bathroom window and instead decide the jury could not believe it, determine it unreasonable for a jury to find [Victim] was tampering with Mr. Eubanks' property, and refuse his tendered instructions.

Assuming *arguendo* that **Jackson** and **Barnett** vitiate the principle of "judicial admission"[10] in a jury-tried criminal case as to a defendant's testimony at trial (at least in this narrow respect), Eubanks still fails to demonstrate that substantial evidence injected the issue of defense of property.

Defense of property would only excuse Eubanks' use of physical force against Victim to the extent of Eubanks' ***reasonable*** belief as to its ***necessity*** in preventing the commission or (as relevant here) attempted commission of tampering. "To tamper" is "to interfere with something improperly, to meddle with it, displace it, make unwarranted alterations in its existing condition, or to deprive, temporarily, the owner or possessor of that thing." § 569.010(4). In the light most favorable to Eubanks, there was evidence of Victim's presence outside Eubanks' bathroom window, Victim's utilization of the outer road abutting Eubanks' property, and Victim having taken "three or four steps" onto Eubanks' property when Eubanks and Burns approached and

---

[10] **Middleton v. State**, 103 S.W.3d 726, 742 (Mo. banc 2003) "(When a defendant makes a voluntary judicial admission of fact before a jury, it serves as a substitute for evidence and dispenses with proof of the actual fact and the admission is conclusive on him)" (quoting **State v. Roberts**, 948 S.W.2d 577, 588 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998)); **State v. Denzmore**, 436 S.W.3d 635, 643 (Mo.App. E.D. 2014) ("The general rule is that when a defendant makes a voluntary judicial admission of fact before the jury, . . . [t]he admission is conclusive on him for the purpose of the case.") (internal quotation and citation omitted).

12

began talking to Victim.[11]  This was insufficient to inject the issue as to Eubanks' reasonable belief as to Victim committing or attempting to commit tampering.[12]

Eubanks fails to demonstrate that sufficient evidence injected the issue of defense of property, and likewise fails to demonstrate that the trial court erred in rejecting his proffered jury Instructions E and F (Point I), Instruction A (Point II), Instruction B (Point III), Instruction C (Point IV), and Instruction D (Point V).  Points I, II, III, IV, and V are denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS

---

[11] *See* note 1 of this Opinion.

[12] *See* **State v. Hankins**, 721 S.W.2d 218, 219 (Mo.App. S.D. 1986) (applying section 563.041):
> Under those circumstances, there was not a factual basis for Hankins to believe there was to occur any damage or attempted damage to his dog. In fact, Hankins' own testimony was that the fight broke out because he told Offield and Ellis to get off his property.  There was nothing to lead the court to believe, or from which it could infer, that Hankins was protecting the dog.  There was no basis for Hankins to believe it was necessary to use physical force in order to prevent harm to the dog.